Mr. Justice NELSON,
 

 after reading the statement in .the commencement of this report, proceeded to deliver the opinion of the court.
 

 When this causé was formerly before the. court, involving a question arising out of the pleadings, it was held, that the condition of the bond was prospective, and subjected the sureties to liability only in case of default or. official misconduct of the principal occurring after the execution of the instrument.; and that if intended to cover, past dereliction of duty, it should have been made retro.spective in its language; that the sureties had not undertaken for past misconduct. 15 Pet. 187. ■
 

 The case is now before us,‘after a trial on the merits, and the question is, whether or not any breach of duty has been established, which entitled the government to recover the amount in question, or any part of-it, against the'sureties within the condition of the bond as already' expounded.
 

 Since the verdict rendered under the instruction given by the court below, we. must assume that the whole amount of the $59,622.60, of which the receiver is in default to the government, accrued against him in consequence of the entry of public lands in his own jname, and in the name of others, without the payment of any money in respect to the tracts entered in his own name, and without exacting payment of others, in respect to the tracts entered in their names; and all happening before the 15th June,' 1837, the date of the bond. So the jury have found.
 

 The fraud, thus developed, was accomplished at. the time by means of false certificates of the receipt of the purchase money by the receiver,' which were given by .him in the usual way, as the entries for the several tracts of land were made at the register’s office and also by entering.and keeping the accounts with the'gov-' eminent .the same as if the money had been actually paid as fast as the lots were-, entered. The monthly- or .quarterly returns to the proper department would thus appear unexceptionable, and the fraud concealed until payment of the balances should be called for by the Government.
 

 According to the finding of the jury, therefore, the whole of the money, of which the receiver is claimed to be, and no doubt is, in default, and for which - th'e sureties are and'ought to be made responsible, were not only not in his hands of custody at the time-of the execution of the bond, but, in.point- of fact, never had been in his hands at any time, before or since. No part .'of it was ever received by any body. The whole of the- account charged was
 
 *49
 
 made up by means of fabricated certificates of the receiver,* and false entries in his returns to the government.
 

 The act of Congress of the 24th of April, 1820, § 2 (3 Statutes at Large, 566), provides, — “ That credit shall not be allowed for the purchase money on the sale of any of the public lands which shall be sold after the first day of July next; but every purchaser of land sold at public sale thereafter shall, oh the day of the purchase, make ' complete payment therefor ; and the purchaser at private sale shall produce to the register of the land office a receipt from the. treasurer of the United States, or from the receiver, of public moneys of the district, for the amount of the purchase money on any 'tract, before he shall enter the same at the land office.”
 

 The acts of the receiver, out of which the defalcation in question arose, were in direct violation of this provision of - law, and constituted a breach of official duty, which made him hable at once as a defaulter to the government, and would, have subjected his sureties-upon the official bond, if one had been given, covering this period. It was doubtless by some accident that the bond was omitted, as. it will be seen by reference to the acts-5 of Congress, 3d March, 1833, § 5 (4 Statutes at Large, 653)-, and 3d of March, 1803, § 4, and 10th of May, 1800, § 6 (2 Statutes at Large, 75, 230), that a. bond with sufficient sureties should have been given by the receiver, before he entered upon the duties of his office.
 

 It is clear, therefore, that the defalcation had accrued, and Boyd had become a defaulter arid debtor to the government, before the present sureties had undertaken for. his fidelity in office, unless we construe their obligation to be retrospective, and. to cover past as well as future misconduct, which has already been otherwise determined.
 

 Whether a receiver can purchase the public lands within his dis-. trict in his own name, or in the name of others for his benefit, while in office, consistent with law and the'proper discharge of his official duties, it iá not now necessary to express an opinion.
 

 ' The register is expressly prohibitedj act of Congress-, 10 May, 1800, § 10 (2 Statutes at Large, 77), and it would- have been as well if the prohibition had included the receiver.
 

 One thing, however, is clear, and which is sufficient for the purpose of this decision, the act of Congress, forbidding the sale of the •public lands on credit) makes no exception in favor of any officers. He must purchase, if- he purchases at all,, upon the terms prescribed. If this is impracticable, it only proves that the duty of the receiver is inconsistent and incompatible with. the duty of the purchaser, which might amount to a virtual prohibition. But, if otherwise, and the receiver allowed to purchase, the money must be- paid ovér, as in the case of other purchasers, and deposited at the time of-the purchase with thé other moneys received and held by him in trust for the government. The public moneys.in his hands consti
 
 *50
 
 tute a fund, which it is his ditty to keep, and which the law presumes is kept, distinct and separate. from his own private affairs. It is only upon this view, that he can be allowed to purchase die-public lands at all, consistently with the provisions of the act of Congress.
 

 It has been contended, that the returns of the receiver to the treasury department after the execution of the bond, which admit the money to be then in his hands to the amount claimed, should be conclusive upon the sureties. We do not think" so. 1 The accounts rendered to the department of money received, properly authenticated, are evidence, in the first instance, of the indebtedness of the officer against the sureties,; but subject to explanation and contradiction. They are responsible for all the public moneys which were in his hands at-'the date of the bond, or that máy have come into them afterwards, and not properly accounted for; but- not for moneys which the officer may choose falsely to admit in .his hands, in his accounts with the government. ■
 

 The sureties cannot be concluded by a fabricated account of. their principal with his creditors ; théy may always inquire into the reality and truth of the transactions existing between them. The principle has been asserted and applied by this court in several, cases. ■
 

 If the case, had stood upon the first instruction of the' court below, and to which we have already adverted, there would be no 'difficulty in affirming the judgment. But the second instruction was erroneous. -
 

 The court chárged, that if the jury believed, from the evidence, that fraudulent design existed, on the part of Boyd and Garesche, to conceal the fact of the former’s defalcation from the sureties until they had executed the bond, and that such design was communicated to the Secretary of the Treasury, and his answer received beford the execution, in that case the bond would be fraudulent and void, and the sureties not liable. •
 

 Now, in the first place, there is no evidence in the case, laying a foundation for the charge of fraud in the execution of the bond, in the view, taken • by the court as matter of fact, .and therefore the construction was improperly given. And, in the second place,-if • there had been, inasmuch as the condition of the' bond-is prospective, any-fraud in respect to past transactions not within the condi-. tion, which is the only fraud pretended, could not, ..upon any -principles, have the effect of rendering the! instrument null and void in its-prospective operation!
 
 We
 
 may add, also, that, so far as the agency of Garesche was material in • making out the -allegation of ' fraud for the purpose of defeating the. action;. the proof- was altogether incompetent. His acts and declarations for the purpose were admitted without previous evidence of his appointment as'' agent; and also secondary proof-of the contents of a pretended letter-pf appointment, without first accounting.for the non-production of the-.original. . '
 

 
 *51
 
 Before a party can be made responsible for the acts and declarations of another, there must be legal evidence of his authority to act in the matter.
 

 The counsel for the defendants ask the court to revise the judgment of the court below, rendered upon the demurrer to the rejoinders of the defendants to the plaintiffs’ amended replication, overruling the demurrer, insisting that the rejoinder was good, and that judgment should have been rendered for the defendants.
 

 The answer to this is, that the withdrawal of the demurrer, and going-to. issue upon the pleading, operated as. a waiver of. the judgment.
 

 If the defendants had intended to have a review of that judgment on a writ of error, they should have refused to amend the pleadings, and have permitted the judgment on. the demurrer to. stand,'
 

 Another ground upon which the judgment must be reversed is, that a judgment for costs was rendered against the plaintiffs. The United States are not liable for costs.
 

 Some other points were made in the course of the trial, but it is unimportant to.notice them.-
 

 . Judgment of the court below reversed, with a
 
 venire de novo.
 

 Order.
 

 This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of Mississippi, .and was argued by counsel. On consideration whereof, it is now here-ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be and the same is ■hereby reversed, and that this cause- be and the same is hereby remanded-to the said Circuit. Court,-with directions to award a
 
 venire facias de novo.