68 U.S. 25 (1863)
1 Wall. 25
CLEARWATER
v.
MEREDITH ET AL.
Supreme Court of United States.

*28 Mr. Pugh for Clearwater, the plaintiff in error.
Mr. Hendricks, contra.
*38 Mr. Justice DAVIS, after stating the case, delivered the opinion of the court:
In order to arrive at a correct solution of this question, it is important to consider whether the plea is a good one, for a demurrer, whenever interposed, reaches back through the whole record, and "seizes hold of the first defective pleading." The plea in controversy confesses the original cause of action, but sets up matter, which has arisen subsequent to it, to avoid the obligation to perform it. It acknowledges that the guaranty was given as claimed, but insists that the consolidation of the interests and stock of the three railroad companies necessarily destroyed and rendered worthless and of no value the guaranteed stock, and that Clearwater having consented to the transfer, is in no position to claim redress from Meredith and his co-defendants.
*39 If Clearwater was a consenting party to a proceeding which, of itself, put it out of the power of the defendants to perform their contract, he cannot recover, for "promisors will be discharged from all liability when the non-performance of their obligation is caused by the act or the fault of the other contracting party."[*]
The Cincinnati, Cambridge and Chicago Short Line Railway Company, whose stock was guaranteed, was, as stated in the pleadings, organized under a general act of the State of Indiana, providing for the incorporation of railroad companies. This act was passed May 11, 1852, and contained no provision permitting railroad corporations to consolidate their stock. It can readily be seen that the interests of the public, as well as the perfection of the railway system, called for the exercise of a power by which different lines of road could be united. Accordingly, on the 23d February, 1853, the General Assembly of Indiana passed an act allowing any railway company that had been organized, to intersect and unite their road with any other road constructed or in progress of construction, and to merge and consolidate their stock, and on the 4th of March, 1853, the privileges of the act were extended to railroad companies that should afterwards be organized.
The power of the legislature to confer such authority cannot be questioned, and without the authority, railroad corporations organized separately, could not merge and consolidate their interests. But in conferring the authority, the legislature never intended to compel a dissenting stockholder to transfer his interest, because a majority of the stockholders consented to the consolidation. Even if the legislature had manifested an obvious purpose to do so, the act would have been illegal, for it would have impaired the obligation of a contract. There was no reservation of power in the act under which the Cincinnati, Cambridge & Chicago Short Line Railway was organized, which gave authority to make material changes in the purposes for which the corporation was created, and without such a reservation, in no event could a dissenting stockholder be bound.
*40 When any person takes stock in a railroad corporation, he has entered into a contract with the company, that his interests shall be subject to the direction and control of the proper authorities of the corporation to accomplish the object for which the company was organized. He does not agree that the improvement to which he subscribed should be changed in its purposes and character, at the will and pleasure of a majority of the stockholders, so that new responsibilities, and it may be, new hazards, are added to the original undertaking. He may be very willing to embark in one enterprise, and unwilling to engage in another; to assist in building a short line railway, and averse to risking his money in one having a longer line of transit.
But it is not every unimportant change which would work a dissolution of the contract. It must be such a change that a new and different business is superadded to the original undertaking.[*] The act of the legislature of Indiana allowing railroad corporations to merge and consolidate their stock, was an enabling act  was permissive, not mandatory. It simply gave the consent of the legislature to whatever could lawfully be done, and which without that consent could not be done at all. By virtue of this act, the consolidations in the plea stated were made. Clearwater, before the consolidation, was a stockholder in one corporation, created for a given purpose; after it he was a stockholder in another and different corporation, with other privileges, powers, franchises, and stockholders. The effect of the consolidation "was a dissolution of the three corporations, and at the same instant, the creation of a new corporation, with property, liabilities, and stockholders, derived from those passing out of existence;" McMahan v. Morrison.[] And the act of consolidation was not void because the State assented to it, but a non-consenting stockholder was discharged.[] Clearwater could have prevented *41 this consolidation had he chosen to do so; instead of that he gave his assent to it and merged his own stock in the new adventure. If a majority of the stockholders of the corporation of which he was a member had undertaken to transfer his interest against his wish, they would have been enjoined.[*] There was no power to force him to join the new corporation, and to receive stock in it on the surrender of his stock in the old company. By his own act he has destroyed the stock to which the guaranty attached, and made it impossible for the defendants to perform their agreement. After the act of consolidation the stock could not have any separate, distinct market value. There was, in fact, no longer any stock of the Cincinnati, Cambridge & Chicago Short Line Railway.
Meredith and his co-defendants undertook that the stock should be at par in Cincinnati, if it maintained the same separate and independent existence that it had when they gave their guaranty. Their undertaking did not extend to another stock, created afterwards, with which they had no concern, and which might be better or worse than the one guaranteed. It is not material whether the new stock was worth more or less than the old. It is sufficient that it is another stock, and represented other interests.
But it is said that the plea is defective because it does not aver that the consolidation was an act done without the consent of the defendants. The pleadings do not aver that the defendants were stockholders in any of the roads whose interests were merged, and if they were not, it is not easy to see what right they had to interpose objections to consolidation, nor how their consent was necessary to carry out the object contemplated. If the plaintiff consented because they did, and it is meant to be argued on that account, they would still be liable on their contract; the answer is, that this is not a matter to be negatived by the defendants, but the plaintiff should reply the fact.[]
*42 It follows that the fifth plea presented a complete defence in bar of the action.
In this plea there were two points, and two only, which the plaintiff had the right to traverse. He could deny either the act of consolidation, or that he gave his consent to it. He could not deny both, for that would make his replication double. And if either fact was untrue, the defence was destroyed. The truth of both was essential to perfect the defence. But traverse can only be taken on matter of fact, and it is always inadmissible to tender an issue on mere matter of law.[*]
The last replication does traverse a conclusion of law. Whether the stock of the Cincinnati, Cambridge & Chicago Short Line Railway Company was destroyed and rendered worthless and of no value, was not a question for a jury to try. If the roads were consolidated, with the consent of the plaintiff, then it followed, as a conclusion of law, that the stock was destroyed and of no value. The stock passed out of existence the very instant the new corporation was created. The issue, therefore, tendered by the plaintiff in his last replication, was an immaterial one, and the court did not err in sustaining a demurrer to it.
But the plaintiff claims the right to have the decision of the court below on the sufficiency of his previous replications reviewed here. This he cannot do. Each replication in this cause is complete in itself; does not refer to, and is not a part of what precedes it, and is new pleading. When the plaintiff replied de novo, after a demurrer was sustained to his original replication, he waived any right he might have had, to question the correctness of the decision of the court on the demurrer. In like manner he abandoned his second replication, when he availed himself of the leave of the court, and filed a third and last one.
But the plaintiff insists that even if his replication was bad, that still upon the whole record he was entitled to judgment, because the first and fourth pleas were undisposed of *43 If an issue in fact had been joined on the fifth plea, and found for the defendants, judgment was inevitable for them, because the plea was in bar of the action, and the other pleas would then have presented immaterial issues. If the plea was true, being a complete defence, it would have been useless to have tried other issues, for no matter how they might terminate, judgment must still be for the defendants. The state of pleading leaves the fifth plea, precisely as if traverse had been taken on a matter of fact in it, and determined against the plaintiff. "On demurrer to any of the pleadings which go to the action, the judgment for either party is the same as it would have been on an issue in fact, joined upon the same pleading and found in favor of the same party." (Gould's Pleading, ch. ix, § 42.) "And when the defendants' plea goes to bar the action, if the plaintiff demur to it and the demurrer is determined in favor of the plea, judgment of nil capiat should be entered, notwithstanding there may be also one or more issues in fact; because, upon the whole, it appears that the plaintiff had no cause of action." (Tidd's Practice, 4th American Edition, 741-2.)
There is no error in the record.
JUDGMENT AFFIRMED WITH COSTS.
NOTES
[*] 2 Parsons on Contracts, 188.
[*] The Hartford, &c., R.R. Co. v. Croswell, 5 Hill, 383; Banet v. The Alton, &c., R.R., 13 Illinois, 510.
[] 16 Indiana, 172.
[] McCray v. Junction Railroad Co., 9 Id. 358.
[*] Lauman v. Lebanon Valley Railroad, 30 Pennsylvania State, 46.
[] 1 Chitty's Pleading, 222.
[*] 1 Chitty's Pleading, 645.