FRISHMUTH et al. v. FARMERS' LOAN & TRUST CO.

ANTELO v. SAME.

(Circuit Court of Appeals, Second Circuit. February 27, 1901.)

Nos. 19, 79.

1. APPEAL—REVIEW OF DECREE SUSTAINING DEMURRER—WAIVER BY AMEND-MENT.

A complainant who amends his bill after a demurrer has been sustained thereto cannot have the decree sustaining such demurrer reviewed on appeal from a subsequent decree rendered on the amended bill.

2. LIMITATIONS—STATUTE APPLICABLE—NATURE OF SUIT.

Where a railroad mortgage executed to a trustee contained no express covenant on the part of the trustee, one cannot be implied, unless clearly growing out of the language or the obvious intent of the parties; and a suit by the bondholders secured, against the trustee, for its failure to properly protect their interests, is one for a breach of duty implied by law, and not for a breach of covenant, for the purposes of determining the statute of limitations applicable to such suit.

3. SAME—SUIT FOR BREACH OF TRUST—EFFECT OF AMENDMENT ALLEGING FRAUD.

A railroad company executed and delivered to a trustee bonds, and a mortgage securing the same, upon property yet to be acquired and constructed; the mortgage providing that the bonds should be certified and issued by the trustee from time to time on request of the company, the proceeds to be retained by the trustee, and paid out only on the orders of the company, stating the purpose for which such proceeds were to be used, or that the bonds should be delivered to the company on the like statement; the company covenanting that the bonds or their proceeds should be used only for the purposes contemplated by the mortgage. Holders of the bonds filed a bill against the trustee for relief on the ground that it had certified and issued the bonds without the statements required, and which did not have the security contemplated by the mortgage, by reason of which fact they proved to be worthless. A demurrer to the bill was sustained on the ground that the suit was barred by limitations. *Held*, that the gravamen of the bill was a breach of trust on the part of defendant, and that its nature was not changed by amendments merely adding an allegation that the action of the defendant was fraudulent, so as to convert it into a bill for fraud, against which limitations would not begin to run until the fraud was discovered by complainants.

4. RAILROAD MORTGAGE—DUTY AND LIABILITY OF TRUSTEE.

A trustee in a railroad mortgage cannot be held liable to the bondholders because of its failure to defend a suit for the forfeiture of a land grant to which the company would have been entitled on making a certain payment, where it is not shown that there was any defense, or that the rights of the company had not previously been lost without fault of its defendant.

Appeal from the Circuit Court of the United States for the Southern District of New York.

These two bills in equity, which were brought in the circuit court for the Southern district of New York, are founded upon substantially the same facts, but the legal liability of the defendant is presented in the respective bills in a different form. To each bill the defendant interposed substantially the same demurrers, which were heard by Judge Wallace, who, as will be seen, overruled a part of the demurrers, sustained a portion, and dismissed the bills unless the complainants should see fit by amendment to obviate the objections which were sustained. 95 Fed. 5, 12. Each complainant did thereupon amend, the amended bills were again demurred to, were held not

to have been cured, the demurrers were sustained, and the bills were dismissed. The allegations of fact in the bills are voluminous, were stated as briefly as the nature of the case permitted in the opinion of Judge Wallace in the Frishmuth Case, and are as follows:

· "The complainants, owners of certain mortgage bonds created by the Oregon Pacific Railroad Company, allege by their bill of complaint that by the neglect and breach of duty of the defendant, the trustee named in the mortgage, they have wholly lost the amount represented by their bonds, and pray for a discovery and an accounting. The bill was filed in January, 1899. The defendant by demurrer objects that the bill does not disclose a cause of action, that there is a defect of parties defendant, that there is a defect of parties complainant, that the suit is barred by the statute of limitation, and that the laches of the complainants, in view of the facts set forth in the bill, preclude any recovery. The mortgage or trust deed is set out in full in the bill of complaint. It was executed October 1, 1880, by the Oregon Pacific Railroad Company as party of the first part, the defendant as party of the second part, and the Willamette Valley & Coast Railroad Company as party of the third part, to secure an issue of fifteen thousand bonds, of the denomination of $1,000 each, of that date, payable October 1, 1900, with interest semi-annually, reciting upon the face that they were 'limited in issue to $25,000 per mile' of railroad.

"The Willamette Valley & Coast Railroad Company (hereafter called the 'Willamette Company') was incorporated with authority, among other things, to construct a railroad from Corvalis to Yaquina Bay, in the state of Oregon; had acquired by grant from that state certain lands situate in Benton county, and was entitled to appropriate other lands of the state for station buildings, depots, workshops, etc.; and was also entitled to acquire by the payment of $600,000 a grant from the state of Oregon to the Willamette Valley & Cascade Mountain Wagon-Road Company (hereafter called the 'Wagon-Road Company') covering about eight hundred and fifty thousand acres of land. The Oregon Pacific Railroad Company (hereinafter called the 'Oregon Company') was incorporated with authority, among other things, to construct and operate a railroad from Yaquina Bay to Boisé City, in the state of Oregon; to construct the railroad of the Willamette Company, acquire it, and operate it; and to construct or acquire water craft, and operate the same in connection with its railroads. To secure the payment of the fifteen thousand bonds created by the Oregon Company, that corporation and the Willamette Company joined in the mortgage, and conveyed to the defendant, in trust and upon the covenants therein expressed, their franchises and all their property then existing or thereafter to be acquired. At the date of its execution neither the Oregon Company nor the Willamette Company had any railroad constructed, or had any other property of value to which the lien of the mortgage could attach, except the franchises and land grant of the Willamette Company, and the right of that company, by the payment of $600,000, to become owner of the eight hundred and fifty thousand acres of land included in the grant to the Wagon-Road Company. By the terms of the mortgage the bonds were not to become valid obligations until certified by the trustee, and they were to be deposited by the Oregon Company with the defendant, to be certified and issued from time to time at the request of the Oregon Company as the same should be sold or otherwise disposed of. The mortgage contained covenants on the part of the Oregon Company to do or cause to be done all the acts and things necessary and proper to preserve intact the lien of the mortgage upon all the property conveyed, and to perform all such further acts as the trustee should deem proper and expedient for more effectively securing the payment of the bonds; to apply the proceeds arising from the first three thousand two hundred and fifty bonds issued to it by the trustee, first to the payment of the $600,000 necessary to enable the Willamette Company to acquire the land grant of the Wagon-Road Company, next to the construction and equipment of one hundred and thirty miles of railroad from the ocean eastward, and thereafter any surplus, as well as the proceeds of all the other bonds issued to it by the trustee, to the construction and equipment of the rest of its railroad, the purchase of water craft, and the general purposes of its incorporation. The Oregon Company also covenanted to deposit

with the trustee the sum of $30,000 in each year, commencing with the year 1883, to be invested by the trustee as a sinking fund for the purchase of the bonds, and to pay the bonds, principal and interest, according to their terms.

"The provision of the mortgage authorizing the defendant to issue the bonds reads as follows: 'The said trustee may certify and issue any of the said bonds at any time on the request of the party of the first part in writing, and the net proceeds which may be realized upon the sale shall be paid over to and remain in the hands of the said trustee for the purposes above enumerated, and shall be paid out only on the written order of the executive committee of the board of directors of the party of the first part, and all such orders shall include a statement declaring the purpose or purposes for which the proceeds of the bonds so ordered to be paid over are to be appropriated or used: provided, however, that, in case the party of the first part shall desire to apply any of the said bonds for the purposes of its incorporation without converting the same into money, it shall furnish the said trustee with a like written order of the said executive committee, which shall include a written statement declaring the purpose or purposes for which the said bonds are to be appropriated or used, and in that case the said trustee shall certify, issue, and deliver the said bonds. Nothing herein contained shall be so construed as requiring the said trustee to inquire into the application of the funds or the bonds which it may deliver over upon the receipt of such orders as aforesaid.' The mortgage contained the usual provisions, in case of a default in the payment of the principal or interest of the bonds, authorizing the trustee, upon the request of the holders of one-fourth of the then outstanding bonds, to enter into and take possession of the mortgaged property and receive the earnings and income thereof, and for the foreclosure and sale of the mortgaged property; and it provided that in case of a foreclosure sale the trustee might become the purchaser, might procure the organization of a new corporation for the benefit of the holders of the bonds upon such terms as a majority of the bondholders should request, and should aid and promote in all lawful ways any plan of such a reorganization. It also contained the following provision: 'That the party of the second part, and its successors or successor in the trust hereby created, shall. be responsible only for reasonable diligence in the management thereof, and shall not be accountable in any case for the act or default of any agent, attorney, or employé, when such person shall have been selected with reasonable discretion; and the party of the second part, its successors or successor, shall be entitled to be reimbursed all its proper outlays of any sort and nature by it incurred in the discharge of this trust after the execution of these presents. including reasonable attorney's and counsel fees incurred in that behalf, and shall be entitled to receive a reasonable and proper compensation for any duty it may at any time perform in the discharge of the trusts hereby created.'

"The bill alleges that in May, 1881, the defendant certified and delivered to the Oregon Company three thousand two hundred and fifty of said bonds; that the order for the bonds did not contain any declaration of the purpose for which they were to be used, except the general one that they were to be 'appropriated or used in the purchase of necessary materials for the construction of its lines and the discharge of its obligations, and for other proper purposes of its incorporation'; that at the time of certifying and delivering these bonds the right to acquire the land grant for the eight hundred and fifty thousand acres had expired, and the defendant was aware of the fact; that the Oregon Company did not construct the one hundred and thirty miles of railroad from the Pacific Ocean eastward, but did build and equip only about seventy-two miles of said projected railroad, which was commenced about July, 1881, and completed about October, 1884, and which did not cost the proceeds of twenty-five bonds per mile; that in December, 1884, the defendant. with knowledge that said railroad had been constructed, and that the land grant for the eight hundred and fifty thousand acres had not been acquired, issued and delivered to the Oregon Company one thousand more of the bonds, and shortly afterwards three thousand seven hundred and fifty more, and subsequently, and in June, 1885, all of the remainder of the fifteen thousand bonds; that the orders upon which all of the bonds were thus issued contained only a statement of the purposes for which they or their

proceeds were to be appropriated, like that contained in the first order; that after the certification and issue of the fifteen thousand bonds, although the construction of the railroad of the Oregon Company was proceeded with in an inefficient way, only ten more miles of railroad were constructed and equipped until 1886, and sixty miles more by the fall of 1889; that the proceeds of eleven thousand of the bonds were not appropriated by the Oregon Company to the acquisition, construction, or betterment of the mortgaged property, or for any of the purposes in the mortgage declared; that in October, 1890, the Oregon Company became insolvent, and defaulted in paying the interest upon the bonds, and the defendant brought its action for the foreclosure of the mortgage and the appointment of a receiver of the mortgaged property, and in December, 1894, the mortgaged premises were sold under a decree of sale in the action to parties who purchased for their own benefit, and not for that of the holders of the bonds, and a deed of conveyance was executed and delivered to the purchasers, and thereby the holders of the bonds wholly lost all the benefit and security of the mortgage."

Silas W. Pettitt, for appellants Frishmuth and others.

Wm. Putney, for appellant Antelo.

John E. Parsons and David McClure, for appellee.

Before LACOMBE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge (after stating the facts as above). The circuit judge was of the opinion that the bill stated a good cause of action, and overruled the first demurrer. The grounds upon which he rested his conclusion were that the duties of the defendant, which was a trustee for the benefit of the bondholders, were not simply those which were stated in terms in the mortgage, but were imposed upon and were assumed by the defendant by the fact of trusteeship, and by the situation or obvious nature of the mortgage security. In this case—

"The security was practically in nubibus at the inception of the trust, and was to be created by the co-operation of the defendant and the Oregon Company. It was to be constituted an adequate security by the acquisition of property by the Oregon Company through the proceeds of the bonds to be issued by the trustee. The mortgage was sedulously framed and expressed to induce investors to purchase the bonds upon the faith that such property would be acquired with the proceeds, and that as the bonds were issued by the trustee the proceeds would be devoted by the Oregon Company, under the supervision of the trustee, to feed the security and satisfy the promises set forth in the bonds and in the mortgage covenants. The statement in the bonds that the issue was to be limited to $25,000 per mile of railroad was a promise by the Oregon Company that there should be a mile of completed railroad for every $25,000 of bonds issued. This statement, and also the covenant in respect to the application of the proceeds of the first bonds to be issued, were obviously inserted to assure investors that the security would be adequately augmented concurrently with the issue of the bonds. The only possible object of the provision restricting the trustee from delivering the bonds or their proceeds to the Oregon Company, except on orders declaring the purposes for which they were to be used, was to satisfy the investors that the trustee was to supervise the operations of the Oregon Company in respect to the purposes to which it intended to make application of the proceeds, and thus effectuate the promises of that company. The several provisions imply the power and the duty of the trustee to refuse to issue bonds except when supplied with evidence that the avails are to be used conformably with the promises of the Oregon Company. The defendant cannot escape responsibility to those who have bought the bonds upon the theory that the mortgage does not contain any covenants by the trustee prescribing its conduct except in the event of a default in payment. They are

entitled to hold the defendant to the performance of the duties which, from the import of the provisions, they had a right to suppose the trustee would perform. While its terms exonerate the trustee for a misapplication after it has delivered the bonds or proceeds to the Oregon Company upon orders of the requisite character, they do not absolve it further. They certainly do not protect the trustee in delivering bonds or proceeds which it knows or has reason to believe are not to be applied properly. The instrument is not to be construed as authorizing the trustee to deliver the bonds or their proceeds upon orders containing such vague and indefinite declarations as were inserted in those given by the Oregon Company. Upon such a construction the provision conferring authority would afford no security for the bondholders, and would be a mere sham. It was intended to restrict the trustee from delivering bonds or proceeds without information of the specific uses to which, from time to time, they were being applied, in order to enable the trustee to ascertain whether they were being expended conformably to the promises of the Oregon Company."

The third demurrer was sustained because the action was brought in the name of the complainants alone,—a defect which was subsequently cured by amendment. The fourth and fifth demurrers, that the suit was barred by the statutes of limitations, were sustained because the entire issue of bonds had been delivered by the defendant in June, 1885, $14\frac{1}{2}$ years before the commencement of the action; and, while courts of equity of the United States are not subject to restriction by state statutes, they feel themselves bound, in cases of concurrent jurisdiction, to act in analogy to those statutes. The sixth and seventh demurrers, which set up the defense of laches, were overruled. Judgment was ordered sustaining the third, fourth, and fifth demurrers, and overruling all the others and dismissing the bill unless the complainants saw fit by amendment to obviate the objections. The complainants thereupon amended by adding to the original bill averments that the same acts in regard to certification which had been previously stated were fraudulent, that the certification of the bonds was to enable the Oregon Railroad Company to perpetrate a fraud, and averred the ignorance of the fraud by the complainants and its concealment. The defendant thereupon renewed, in substance, its demurrers; and the circuit court adhered to its original position upon the ground that if the cause was, as before, for the breaches of duty by the defendant, the statute of limitations would defeat the action, but, if the amendment turned the bill into one for fraud, it stated a cause of action which was not common to all the bondholders.

The complainants in the Frishmuth Case treat the amendment as immaterial, and as simply asserting that the acts of the defendant constituted a legal fraud, without changing the cause of action, which was for a breach of covenant, and urge that the decision upon the original bill was erroneous. If the complainants had wished a review of that decree, they should have omitted to amend the bill by the averment in regard to fraud, and should have taken an appeal from the judgment which sustained the demurrers. U. S. v. Boyd, 5 How. 29, 12 L. Ed. 36; Jones v. Thompson, 6 Hill, 621. But, as the complainant is urgent upon the question that the bill as amended is an action upon a sealed instrument for the breach of covenants therein, and therefore the cause of action is not barred, except by analogy to the statute which prescribed a limi-

tation of 20 years, and as the amendment was confessedly immaterial, we will look into the question of the cause of action.

It is clear that the mortgage contained no express covenant against neglect of duty by the trustee. Neither can any implied covenants to that effect be read into its terms. The defendant signed the mortgage and attached its corporate seal for the purpose of expressing its acceptance of the trust. The law imposes upon a trustee the duty of fidelity to the pecuniary interests of the cestuis que trustent, and the necessity for fidelity is measured somewhat by the situation of the trust fund. In the case of this mortgage, as the security was "practically in nubibus," it was the duty of the trustee to see that new bonds were not carelessly and improvidently issued upon vague declarations of the purposes to which they were to be applied. This duty was imposed by law from the fact of trusteeship, and was not imposed by covenant. The omission to discharge the obligation was a breach of duty, and may be regarded as a breach of a quasi contract, or contract implied by law. A covenant to discharge the duty was not one which would naturally be inserted in a mortgage between a mortgagor and a trustee, and ought not to be inserted by implication unless clearly growing out of the language or the obvious intent of the parties. In the Antelo Case it is not claimed that the liability of the defendant was for the losses sustained by a breach of covenant, but was for the losses sustained by a breach of its duty. The acts of the trustee which are complained of with respect to the certification of the bonds are the same as in the Frishmuth Case, but the Antelo bill avers that the right to acquire the 850,000 acres existed until the fall of 1894, when it was lost by the neglect of the trustee to defend against a suit to declare the forfeiture of the right. Altschul v. Hogg (C. C.) 62 Fed. 539. The same disposition was made of the several demurrers as was made in the Frishmuth Case, except as to the second, which alleged a defect of parties complainant,—a defect which did not exist in the Antelo bill. The complainants thereupon amended, not by changing the original bill, but adding to it averments which were, in substance, those of the amendment in the Frishmuth suit, and that the fraud was concealed until within six years before suit was brought; the object being to bring the case within the rule of the United States courts that, where an action is brought in equity to recover on the ground of actual concealed fraud, "time will not begin to run in favor of the defendant until the discovery of the fraud, or until with reasonable diligence it might have been discovered." Kirby v. Railroad Co., 120 U. S. 130, 7 Sup. Ct. 430, 30 L. Ed. 569. If, as in the Frishmuth Case, the appellant had wished to challenge the correctness of the decree which dismissed the original bill, he should have appealed from that decree. U. S. v. Boyd, supra. The questions of importance which are before the court upon this appeal are whether the grounds of demurrer have been removed by the amendment; that is, whether the cause of action, as now stated by the bill as amended, is one for fraud, or, as before, for a breach of duty, and, if for fraud, what are the consequences. Is it a good bill, or is it multifarious (the defendant having made multifariousness an additional ground of demurrer), or was the

injury remediable only by an action at law? The fundamental question is, what is the cause of action as stated in the bill? The appellant makes an additional point in regard to the form of the decree,—that it did not state, as it should have done, the causes of demurrer which were allowed and disallowed. The decree upon the original bill disallowed all the causes of demurrer, except those relating to the statute of limitations; and the opinion of the circuit judge upon the demurrers to the amended bill shows that, in his opinion, the question before him was upon the effect of the amendment. There is no practical difficulty in knowing which of the demurrers were sustained. The amendment consisted in characterizing the certification of the bonds as fraudulent, and adds to the previous averments of negligence the word "fraudulent." It is apparent, and it is conceded by the appellee, that the gravamen of the bill is still violation of duty, and that there was no intention to change the cause of action, which originally was for relief from the breach of trust by the trustee in certifying bonds which did not have the requisite security, and therefore were fraudulent in their nature. The original bill and the amendment contain a single set of facts, and the prayer of the bill as amended is for payment of the bonds, which have become worthless by the negligent conduct of the trustee. When the gravamen of the bill is for a breach of duty, and the action is thereby brought within the adverse effect of the influence of the statute of limitations, the addition of bare averments which call the same acts fraudulent do not convert it into a bill both for a fraud and a breach of duty or for fraud alone. The alleged acts constituted negligence, and it is useless to escape from the legal consequences of an action to recover damages for such acts by affixing to them the adjective "fraudulent." The bill is what it was originally, and the rider in regard to fraud has not altered its character.

The counsel for the complainant is of the opinion that sufficient attention was not paid by the circuit judge to the allegations of negligence on the part of the defendant in not defending in 1894 against the suit in Oregon for the forfeiture of the right of the railroad company to 850.000 acres of land, whereby a decree of court was entered which involved an alleged loss to the bondholders of $3,000,000. The circuit judge did not apparently hold that a recovery for the consequences of this alleged negligence was barred by lapse of time, but was of opinion that no sufficient acts of negligence were averred in the bill, for it does not appear that there was a defense, or that the right had not long before the commencement of the suit been lost. We think that the bill was and is deficient in that respect. The decrees of the circuit court in each suit are affirmed, with costs of this court.