**UNITED STATES v. KNOWLES' ESTATE et al.**

No. 6696.

Circuit Court of Appeals, Ninth Circuit.

May 9, 1932.

Anthony Savage, U. S. Atty., and Hamlet P. Dodd, Asst. U. S. Atty., both of Seattle, Wash.

Before WILBUR and SAWTELLE, Circuit Judges, and ST. SURE, District Judge.

SAWTELLE, Circuit Judge.

On behalf of the War Department, the United States brought this action for the acquisition of certain tide lands near Ft. Lewis, Wash. The land was adjudged necessary for public use, and the jury awarded the owners $9,000 as the value of the property. The owners filed a cost bill of $598.70; the greater portion of the amount being for expert witness fees. The cost bill was disallowed by the District Court, save for a sum less than $100. From that portion of the judgment awarding any costs whatsoever against the government, this appeal has been brought. The appellees have filed no brief in this court.

The petition filed by the government in the condemnation proceedings in the court below recites that they are based upon the Act of May 16, 1906, 34 Stat. L., pt. 1, page 196 (33 USCA § 592). The government's brief, however, makes no mention of that act, but seems to rely upon the Act of July 2, 1917, 40 Stat. L. 241 (50 USCA § 171). The latter act contains the following provision: " * * * such proceedings to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the States wherein the proceedings may be instituted."

The act of 1906 contains no similar provision.

Inasmuch as the right of the court to tax costs against the United States, and not merely an abuse of its discretion in so doing, is challenged, the appeal is proper. Newton, etc., v. Consolidated Gas Co., etc., 265 U. S. 78, 83, 44 S. Ct. 481, 68 L. Ed. 909; In re Michigan Cent. R. Co. (C. C. A. 6), 124 F. 727, 733.

In the absence of a statute directly and specifically so authorizing, costs cannot be assessed against the United States. This rule has been repeatedly stated by the Supreme Court, from the time of Chief Justice Marshall to the present day.

In United States v. Hooe et al., 3 Cranch, 73, 92, 2 L. Ed. 370, in which Chief Justice Marshall delivered the opinion, the court "directed the decree of the court below to be affirmed, except as to costs, and reversed so much of the decree as awarded the United States to pay costs, and directed that no costs be allowed to either party in this court." The syllabus states that "costs are not to be awarded against the United States."

For more than a century and a quarter, the Supreme Court has adhered to this rule; one of the latest expressions being found in United States v. Worley, etc., et al., 281 U. S. 339, 344, 50 S. Ct. 291, 293, 74 L. Ed. 887:

"4. May costs be awarded generally against the United States, upon condition that they be paid from accumulated funds in the hands of the Veterans' Bureau, if any, available for that purpose?

"The rule is that, in the absence of a statute directly authorizing it, courts will not give judgment against the United States for costs or expenses. United States v. Chemical Foundation, 272 U. S. 1, 20, 47 S. Ct. 1, 71 L. Ed. 131. There is no statute permitting costs to be awarded against the government in this case.

"The question should be answered in the negative."

In Davis, etc., v. Corona Coal Co., 265

U. S. 219, 222, 44 S. Ct. 552, 553, 68 L. Ed. 987, Mr. Justice Holmes made reference to "the familiar rule * * * that the United States should not be held to have waived any sovereign right or privilege unless it was plainly so provided."

In United States v. Chemical Foundation, Inc., supra, the court said, at page 20 of 272 U. S., 47 S. Ct. 1, 8, 71 L. Ed. 131: "The general rule is that, in the absence of a statute directly authorizing it, courts will not give judgment against the United States for costs or expenses. [Cases cited.]"

See, also, Shewan, etc., Inc. v. United States, 267 U. S. 86, 87, 45 S. Ct. 238, 69 L. Ed. 527; Stanley v. Schwalby, 162 U. S. 255, 272, 16 S. Ct. 754, 40 L. Ed. 960; Reeside v. Walker, etc., 11 How. 272, 289, 13 L. Ed. 693; United States v. Boyd et al., 5 How. 29, 50, 12 L. Ed. 36; United States v. Mc-Lemore, 4 How. 286, 288, 11 L. Ed. 977; Island Development Co. et al. v. McGeorge (C. C. A. 3) 37 F.(2d) 345.

■ It is necessary, therefore, to address ourselves to the question of whether or not the provision in the act of 1917, quoted above, "directly authorizes" a court to give judgment against the United States for costs, in proceedings of this nature.

As we have seen, the act of 1917 provides that such proceedings should be "prosecuted in accordance with the laws relating to suits for the condemnation of property of the States wherein the proceedings may be instituted." 1 Rem. Comp. Stat. 1922, § 900, page 604, of the state of Washington, reads as follows: "Whenever the attorney general shall file with the auditor of this state a certificate setting forth the amount of any award found against the state of Washington under the provisions of this act, together with the costs of said proceeding, and a description of the lands and premises sought to be appropriated and acquired, and the title of the action or proceeding in which said award is rendered, it shall be the duty of the state auditor to forthwith issue a warrant upon the state treasury to the order of the attorney general in a sum sufficient to make payment in money of said award and the costs of said proceeding, and thereupon it shall be the duty of said attorney general to forthwith pay to the clerk of said court in money the amount of said award and costs."

It will be observed that the foregoing statute makes no reference to the government of the United States. It contains directions merely for the guidance of state officers. Can it be argued that it authorizes payment of costs by the United States?

This question was answered by the Supreme Court, in connection with a state statute of limitations, in United States v. Thompson, 98 U. S. 486, 488, 489, 25 L. Ed. 194. In that case the court said:

"This case turns upon a statute of the State of Minnesota which bars actions, ex contractu, like this, within a specified time, and the same limitation is applied by the statute to the State. The United States are not named in it. The court below held that the statute applied to the United States, and rendered judgment against them. * * *

"The United States possess other attributes of sovereignty resting also upon the basis of universal consent and recognition. * * * If they sue, and a balance is found in favor of the defendant, no judgment can be rendered against them, either for such balance or in any case for costs. * * *

"The United States not being named in the statute of Minnesota, are not within its provisions. It does not and cannot 'apply' to them." (Italics our own.)

We find it significant that in the foregoing case the Supreme Court should have used the example of costs to illustrate the attributes of the sovereign.

In United States v. Wade et al., and three other cases, 40 F.(2d) 745, 746, the late Judge Dietrich, at that time on the district bench in Idaho, but later a member of this court, was confronted with a state statute similar to the one involved in the instant suit: "Costs may be allowed or not, and, if allowed, may be apportioned between the parties on the same or adverse sides in the discretion of the court." Idaho Comp. Stat. 1919, § 7421.

In passing upon the applicability of that statute to the United States, Judge Dietrich said: "I have sought earnestly to find some ground upon which I could make an exception to the general rule that costs cannot be awarded against the government in litigation to which it is a party. I am inclined to think that under the state statute (Comp. St. Idaho 1919, § 7421) in respect to costs in condemnation proceedings, costs should be equitably apportioned within the discretion of the court as the facts warrant, and such I think is a fair rule; but there really does not seem to be any more reason for awarding costs against the government in a condemnation proceeding than in any other class of litigation. If the government brings an unfounded suit against a citizen upon any other

alleged cause of action, and is unsuccessful, it turns out, under the general rule prohibiting costs against the government, that the citizen has been put to costs in defending a right which the government has wrongfully assailed. A property right in real estate is no more sacred than any other property right, and the reasons for allowing costs against the government in a condemnation proceeding are no more cogent than the reasons for awarding costs against it in any other proceeding."

In Carlisle v. Cooper (C. C. A.) 64 F. 472, 474, 475, the Secretary of the Treasury instituted proceedings for the condemnation of certain real estate in New York City for a public use, under the Condemnation Act of August 1, 1888 (40 USCA §§ 257, 258). Upon appraisal of the land it was found that the funds appropriated by Congress for the acquisition of the property were insufficient, and the proceeding was therefore abandoned. In dismissing the proceeding, the court adjudged certain taxable costs against the government in conformity with the statutes of the state relating to condemnation proceedings. Section 2 of the Condemnation Act of 1888 (40 USCA § 258) provided that "the practice, pleadings, forms and modes of proceedings in causes arising under the provisions of" the act should "conform, as near as may be, to the practice, pleadings, forms and proceedings existing at the time in like causes" in the state courts. This provision, it will be noted, is identical with section 5 of the Conformity Act of June 1, 1872 (28 USCA § 724). In setting aside the judgment for costs, the Circuit Court of Appeals for the Second Circuit said:

"Whether costs were properly awarded against the government, and, if so, whether the amount allowed by the circuit court was authorized by law, are questions which depend upon the effect of the act of congress of August 1, 1888. * * * [Cases cited.] In the absence of legislation by congress authorizing costs against the government, they cannot be imposed in any suit to which it is a party. The principle is that the sovereign power is not amenable to judgments for damages or costs without its own consent. [Cases cited.] When, however, the United States institute a suit, they waive their exemption so far as to allow a presentation by the defendants of set-offs, legal and equitable, to the extent of the demand made or property claimed, and stand, with reference to the rights of the defendants, precisely as private suitors, except that they are exempt from costs and from affirmative relief against them, beyond the demand or property in controversy. [Case cited.] It was undoubtedly the purpose of the act of August 1, 1888, to extend to condemnation suits brought by the government the provisions of the act of June 1, 1872 * * * which prescribes, in effect, that in civil actions at law the circuit and district courts of the United States are to conform their practice and procedure, as near as may be, to that of the state courts in like causes in the state wherein such circuit or district courts are held. If such suits had been governed by these provisions, the act of August 1, 1888, was wholly unnecessary legislation. The act explicitly extends the provisions of the former act to government condemnation suits, and includes them in the category of causes in which the circuit and district courts of the United States are to conform their practice, as near as may be, to that prescribed for the state courts by the laws of the state in which the suit is brought. As its phraseology is industriously copied from the former act, the same meaning must be given to it. It has never been supposed that the act of June 1, 1872, was intended as a consent by congress to waive the immunity of the government from judgments for damages or costs. We have not been referred to any adjudication, nor have we found any, in which it has been held to have that effect. It was intended to remedy the inconvenience to the legal profession of having different systems of practice in the federal and the state courts in the same state. Nearly all the states had enacted codes of practice, and the common-law system of pleadings and practice which obtained in the federal courts was obnoxious to the generation of lawyers who had been educated under the codes. The inconvenience was recognized, and the statute enacted to obviate it. * * * Congress could not have supposed that its remedial legislation would permit judgments against the government for damages or costs. If any such suggestion had been made, it would have been met by the consideration that any attempt, in state codes or practice acts, to accomplish that result, would be nugatory legislation. U. S. v. Thompson [98 U. S. 486, 25 L. Ed. 194], supra. These observations are equally applicable to the act of August 1, 1888.

"When congress has intended to permit claims and judgments to be recovered against the United States, it has spoken in no uncertain terms. By the act of March 3, 1887, it has made provision for suits against the government of the United States and for judgments, which, as to the amount due, shall be binding and conclusive upon the parties.

Section 15 of that act prescribes that, if the government of the United States shall put in issue the right of the plaintiff to recover, the court may, in its discretion, allow costs to the prevailing party. Outside of this statute, and some other statutes relating to special cases, we know of no authority which permits a judgment to be rendered against the government of the United States for costs. So far as the judgment of the circuit courts attempts to impose such a liability, it is erroneous."

In a later case, In re Post Office Site, etc., 210 F. 832, 835, the same court set aside an award for costs against the government in a condemnation proceeding in which the land was taken.

In Kanakanui v. United States (C. C. A. 9) 244 F. 923–925, the government had instituted, but abandoned, a condemnation proceeding against certain land situate in the territory of Hawaii. After the proceeding was abandoned, the owners sought to recover as damages the costs they had incurred in defending the action and also damages for loss of use of the property. Their claim was based partly on section 505 of the Revised Laws of Hawaii of 1905, which provides for the recovery of costs of court and reasonable expenses and damages arising from such an action. In holding that this statute had no application to a proceeding brought by the United States, Judge Gilbert said (244 F. 923, 924):

"The complaint in the present action clearly shows that the plaintiffs suffered substantial damage by reason of the action of the defendant, and it must be conceded that the statute of Hawaii is just and equitable, in that it permits recovery for such damages.

"The question here, however, is whether the United States has subjected itself to liability under that statute. Congress might have enacted that the condemnation suit be conducted according to common law, or by a procedure wholly irrespective of that of the territory of Hawaii. By the act of August 18, 1890 (26 Stat. 316), Congress made the general provision under which the condemnation suit was brought, which was that condemnation shall be conducted in accordance with the laws relating to suits for the condemnation of property of the states wherein the proceedings may be instituted. By virtue of that statute the federal courts are required to follow the local practice, pleadings, forms, and proceedings so enjoined. They are not required to observe any provision concerning any matter of substance prescribed in the local procedure. Such is the doctrine of the decisions wherever the question has arisen."

The opinion then approves of the statement in Carlisle v. Cooper, supra, that the Conformity Act of June 1, 1872, was not intended as a consent by Congress to waive the immunity of the government from judgments for damages or costs.

Accordingly, we hold the judgment should be modified by striking therefrom the award of costs. The judgment is reversed in part, and the suit remanded to the District Court, with instructions to modify the judgment by striking out all the costs therein awarded. In other respects the judgment is affirmed.

Judgment reversed in part, and affirmed in part.