## MEEKER v. BAXTER et al.
### No. 297.

Circuit Court of Appeals, Second Circuit.
April 6, 1936.

Lynch, Cahn & Weed, of White Plains, N. Y. (Monroe J. Cahn, of White Plains, N. Y., of counsel), for plaintiff.

Hurlbert McAndrew, of Larchmont, N. Y., for defendant.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This case comes up on appeals by both parties; the defendants from an order striking out three defences and counterclaims; the plaintiff from an order granting a general inspection of books and papers in his possession. The plaintiff is the receiver of the First National Bank & Trust Company of Mamaroneck; the defendants are two of its shareholders; the action is to recover the full amount of their liability as such. The complaint alleged only that on the second of February, 1934, the Comptroller of the Currency declared that the bank was insolvent and appointed the plaintiff receiver; and that on the ninth of March of that year he determined that it was necessary to enforce the full liability of all shareholders. Then followed a statement of the number of shares held by each defendant and a prayer for judgment for the full amount. The answer denied everything in the complaint—except that the defendants were holders of the shares alleged—and set up three separate defences, pleaded both as such and as counterclaims. As the appeals come before us only on the pleadings, it is necessary to set out these pleas in some detail.

The first alleged in substance as follows: The bank did not open on the eighteenth day of January, 1932, and has not been engaged in the business for which it was organized since that day; in the year 1928 it had extravagantly and unnecessarily built a new banking house at a cost of $466,000; and by 1931 it was "hopelessly and irretrievably" insolvent, so that the Comptroller in October of that year notified it that its capital stock had been impaired to the extent of $150,000, and that the deficit must be made up within three months, or he would liquidate it. In the week beginning January 11, 1932, he also notified it that it could not go on in business unless the village of Mamaroneck took the banking house off its hands, and unless it merged with a trust company of the same place. In compliance with these demands a "corrupt and illegal" agreement was made, to which the Comptroller was a party, by which the village should take over the building for $300,000; the directors should subscribe $150,000; and the trust com-

pany and the bank should merge into a new bank, which would take over all the bank's assets and assume its liabilities. The bank's shareholders, the defendants among them, had no knowledge of this agreement, which was negotiated and executed behind closed doors, and later performed at the procurement and with the connivance of the Comptroller. The defence then concluded with a demand for inspection of all books and papers in the plaintiff's hands, so that the defendants might learn (1) the facts respecting the merger, including the condition of the bank and any waste by its directors; (2) whether any meetings of stockholders had been held regarding the merger; (3) when the banking house was conveyed and the terms of the deed; (4) whether the assets of the bank had been appraised upon the merger; (5) what steps, if any, the bank's officers took to determine the fair valuation of the trust company, the other party to the merger; (6) whether the directors were guilty of any violations of the Banking Act, which had played a part in the consolidation.

The second defence and counterclaim alleged that the bank had been indebted to the Reconstruction Finance Company in the sum of $200,000; that on the twenty-eighth of June, 1932, in fraud of its creditors it conveyed the banking house for $366,000 to the Mamaroneck Trading Company; and that the grantee had then executed a mortgage back to the bank which it in turn assigned to the Reconstruction Finance Company. The fair value of this property had not been "taken into account in determining the alleged liability for which this action is brought"; on this account the assessment was "made in bad faith and is fraudulent, illegal and void." The third defence and counterclaim was that by the transfer of the assets on January 15, 1932, to the new bank and its assumption of the debts, all creditors consented to and accepted the new bank as their debtor and released the old bank from their claims. That when the plaintiff was appointed receiver there were therefore no creditors whose claims arose before the date of this agreement, January fifteenth; and that after that time the bank transacted no business. The answer concluded with a prayer for inspection of the books; for a declaratory judgment that the defendants might examine them; for an injunction against the Comptroller, "his agents and em-

ployees," from prosecuting the action; and for an injunction pendente lite to the same effect. The plaintiff moved to dismiss all the defences and counterclaims. The judge granted that motion; but, without giving the plaintiff opportunity to reply, and apparently without any formal motion by the defendants he granted the defendants an inspection of all the records of the bank. Later he resettled this order in the same terms except that he gave the defendants "leave to plead over, setting up fraud if justified, twenty days after the last day of such inspection." Both sides appealed.

The defendants' appeal must be dismissed. The first order did indeed dismiss their counterclaims without condition, and as they asked that the action be enjoined, the order "refused" an injunction and was appealable under section 227 of title 28, U.S.Code (28 U.S.C.A. § 227). General Electric Co. v. Marvel Rare Metals Co., 287 U.S. 430, 53 S.Ct. 202, 77 L.Ed. 408; Enelow v. New York Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440. But the order, as resettled, modified this dismissal by giving them leave to plead over, which they have not yet done. If they do, the amended pleading alone will survive for any purpose, and we could not review the earlier ruling now before us. United States v. Boyd, 5 How. 29, 51, 12 L.Ed. 36; Clearwater v. Meredith, 1 Wall. 25, 42, 17 L.Ed. 604; Aurora City v. West, 7 Wall. 82, 92, 19 L.Ed. 42; Campbell v. Haverhill, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280; City of Anniston v. Safe-Deposit & Trust Co., 85 F. 856 (C.C.A.5); Frishmuth v. Farmers' Loan & Trust Co., 107 F. 169, 173 (C.C.A.2). Only in case they do not amend, but stand upon their pleadings, will an appeal lie. In the present posture of the case the appeal is therefore premature; the order has not yet "refused an injunction," it has only declared that, if the defendants fail to act, the injunction will be refused.

So far as the order granted an inspection, it was formally erroneous for several reasons. First, the plaintiff had not yet answered the counterclaims taken as bills for discovery, or been given any chance to answer; second, the defendants had not moved to take the counterclaims pro confesso; third, after the judge had stricken out both defences and counterclaims, nothing remained to support

a bill for inspection. Disregarding these formal objections, and treating the defences as though they remained to support a bill for discovery in aid of the action at law, the showing was insufficient. A bill for discovery in aid of a legal defence will not lie if the defences are not good at law. Rondeau v. Wyatt, 3 Brown, Ch. 154; Cholmondeley v. Lord Clinton, Turn.&R. 107; Wallis v. Portland, 3 Ves.Jr. 494; Pressed Steel Car Co. v. Union Pac. R. Co. (D.C.) 241 F. 964; Langdell, Equity Pleadings, § 176. None of these defences was in fact good. The first is very obscure, but apparently the pleader supposed, either that the bank's extravagance in building the new banking house was an excuse to its shareholders; or that to sell its assets and get the new bank to assume its liabilities extended its debts and released its shareholders who were in effect sureties; or that the Comptroller two years before the plaintiff was made receiver, by forcing a contribution from the directors, had begun to liquidate the bank. Shareholders in a bank cannot evade liability by such easy shifts; the assessment is final. Casey v. Galli, 94 U.S. 673, 24 L.Ed. 168; Broderick v. Rosner, 294 U.S. 629, 647, 55 S.Ct. 589, 79 L.Ed. 1100, 100 A.L.R. 1133 (semble); Liberty National Bank v. McIntosh, 16 F.(2d) 906 (C.C.A.4); Crawford v. Gamble, 57 F.(2d) 15 (C.C.A.6); Wannamaker v. Edisto National Bank, 62 F.(2d) 696, 700 (C.C.A.4); Schram v. Schwartz, 68 F.(2d) 699 (C.C.A.2); Emery & Co. v. Wilkinson, 72 F.(2d) 10 (C.C.A.10). It has indeed been said that it may be impeached for "fraud" or "illegality"; and while it is not very clear just what these words mean, we may assume arguendo that if the Comptroller were consciously to assess shareholders in sums which he did not believe to be true, they could show it and escape; perhaps the same may be true if he proceeded in the face of a statute. But his assessment cannot be attacked by showing that the debts were in fact smaller or the assets larger than he took them to be, or that the directors had misconducted themselves or acted without the knowledge of the shareholders, or defrauded them. Fraud must at least mean fraud of the Comptroller in making the assessment, and the defence does not so allege. Nor was a forced subscription from the directors a liquidation. The second and third defences were as bad; the second amounted to no more than that the Comptroller did not take all the bank's property into his computation. It was not enough to add that the assessment was "made in bad faith and is fraudulent, illegal and void"; such charges must be explicit. If the defendants really meant to say that the Comptroller omitted the mortgage from his computation of the assets, knowing that the transfer was fraudulent and that the property should have been included, they were obliged to say so in detail. Chamberlain Machine Works v. United States, 270 U.S. 347, 46 S.Ct. 225, 70 L.Ed. 619. They would probably not dare to make such a charge; if they have the hardihood to do so, it must be with circumstance and upon their own oaths, so that they may be accountable for what they say. The third defence comes to no more than that there were no creditors of the bank; it has not a semblance of validity as a defence. Thus as a bill for discovery the counterclaims were invalid on their face, because the defences to which they were ancillary were demurrable.

■ Apparently the judge did not grant inspection because he thought them good; but by virtue of the defendants' right to inspection at common-law merely as shareholder. Guthrie v. Harkness, 199 U. S. 148, 26 S.Ct. 4, 50 L.Ed. 130, 4 Ann. Cas. 433. In Wittnebel v. Loughman, 80 F.(2d) 222, we granted such an inspection to the shareholder of a national bank already in liquidation, who alleged that he needed the information in order to bring suit in the corporation's right against the directors for waste; and that the statute of limitations was running against him. The receiver had indeed belatedly begun such a suit, but we thought that this eleventh hour effort ought not to stand in the shareholder's path. That shareholder was not acting as an adverse party to the receiver; and though he was indeed subject to assessment, no assessment had been made, and the inspection was not to combat his liability. Here the receiver is an adversary, seeking to enforce an assessment. No doubt shareholders, when so sued, should have the same remedies as any other defendant, but they should have no more. They do not speak as members of the aggregate body seeking to protect the common rights of all those interested, creditors and shareholders alike; they are seeking to defeat

an action brought by the corporation in the interest of its creditors. Their right to inspection should be as broad, but no broader than would be open to any other defendant by bill for discovery. They must show some reason to suppose that they have a defence; they must present at least some provisional basis for believing that the documents in the plaintiff's hands will support that defence. As the case stands, there is not the faintest reason to think that they have any defence whatever, or that the documents would help its proof if they had; they may not rummage freely among them for the mere asking.

To the prayers for relief one is added for a declaratory judgment, apparently for good measure. The defendants misapprehend the purpose of that relief; it is only a kind of expanded bill quia timet, meant to do in general what that suit did in its limited field. When the parties as here have once locked horns and are demanding forcible sanctions, there is no longer room for judicial declarations separate from those which will be implicit or express in the final judgment or decree.

The defendants' appeal is dismissed. The order is reversed on the plaintiff's appeal and the prayer for inspection denied.