JACKSON CO. et al. v. GARDINER INV. CO.

GARDINER INV. CO. v. JACKSON CO. et al.

(Circuit Court of Appeals, First Circuit. October 22, 1912. On Petition for Rehearing, November 20, 1912.)

Nos. 984, 985.

1. INJUNCTION (§ 155*)—PECUNIARY RELIEF—ADEQUATE REMEDY—BOND.

Where, in a suit by a minority stockholder to restrain a sale of the corporation's assets to another company in exchange for cash or stock in the purchasing company, at a stockholder's election, it appeared that complainant's damage, if any, was purely pecuniary in character, it was proper for the court to authorize the substitution of a bond by defendant in place of a preliminary injunction.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 339; Dec. Dig. § 155.*]

2. CORPORATIONS (§ 584*)—SALE OF ASSETS—MINORITY STOCKHOLDERS—RIGHTS.

The capital stock of the J. Co. was intrinsically worth $3,277.51 per share, while that of the N. Co. was intrinsically worth $2,250.37½. A scheme was inaugurated by the majority stockholders of the J. Co. to merge with the N. Co., on the basis of exchanging a share and a half of N. stock for one share of J. stock, or by a purchase of the minority J. stock at $650 a share, the market value, within one year. *Held*, that minority stockholders were entitled to restrain the carrying out of the proposition, unless they were paid the intrinsic value of their shares.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2343-2347; Dec. Dig. § 584.*

Acquisition by corporation of stock of other corporation, see note to Anglo-American Land Mortgage & Agency Co., Limited, v. Lombard, 68 C. C. A. 120.]

3. JUDGMENT (§ 701*)—RES JUDICATA—SUIT BY MINORITY STOCKHOLDERS.

Where a suit by minority stockholders of a corporation to restrain the transfer of its assets and business to another corporation was not in behalf of other stockholders which might join, a judgment of dismissal in such suit was not res judicata of the right of other stockholders to restrain the carrying out of the scheme.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1226; Dec. Dig. § 701.*]

4. COURTS (§ 365*)—FEDERAL COURTS—STATE DECISION—AD INTERIM INJUNCTION.

The rule that in dealing with an ad interim injunction the court will be influenced by a previous decision of the same or another court between different parties as to the same subject-matter has little force as between state and federal courts especially where the law and facts are clear. Nor would the rule be applied where the state court decision was not based on any prior lines of judicial action in the state but was the judgment of the court in litigation which arose after the rights of the parties in the suit in the federal court had become fixed.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 802-805, 1353; Dec. Dig. § 365.*]

5. CORPORATIONS (§ 584*)—SALE OF ASSETS—INJUNCTION—MINORITY STOCKHOLDERS—LACHES.

The directors of a corporation, in which complainants were interested as minority stockholders, sought to put through a scheme to consolidate with another corporation. Certain stockholders instituted suits to restrain the consolidation; but these failed, whereupon complainant, another minority stockholder, a short time before these suits were disposed of, but some years after the event, instituted suit for similar relief.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

*Held*, that complainant was entitled to await the result of the prior litigation, and was therefore not barred by laches.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2343–2347; Dec. Dig. § 584.*]

### On Petition for Rehearing.

6. INJUNCTION (§ 151*)—INTERLOCUTORY INJUNCTION—APPLICATION—HEARING—DETERMINATION OF MERITS.

While an application for an interlocutory injunction will not ordinarily be determined on the merits, if it can be avoided, it is nevertheless proper for the court to dispose of the petition on the merits, or on collateral considerations, as the case may justify.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 336; Dec. Dig. § 151.*]

7. INJUNCTION (§ 151*)—PRELIMINARY INJUNCTION—HEARING—DISPOSITION OF MERITS.

Where, on an application for a preliminary injunction in a stockholder's suit to restrain a sale of the corporation's assets to another company, the corporation filed a brief dealing mostly with the merits, and stating that the only substantial issue of fact attempted to be raised by the bill was the charge that the consideration for the sale was inadequate, when measured in terms of cash, and that every other question was a pure question of law, asking not only that the injunction order be dissolved, but that the bill be dismissed, it was proper for the court to determine the merits.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 336; Dec. Dig. § 151.*]

Cross-Appeals from the District Court of the United States for the District of New Hampshire; Edgar Aldrich, Judge.

Suit by the Gardiner Investment Company against the Jackson Company and others. From an order granting an ad interim injunction, unless defendants filed a bond in the sum of $60,000 to protect complainant, defendants appealed; and complainant appealed from the provision giving defendants the option to substitute a bond. Affirmed.

See, also, 200 Fed. 120.

Owen D. Young, of Boston, Mass. (Burton E. Eames and Tyler & Young, all of Boston, Mass., on the brief), for complainant.

Edmund K. Arnold, of Boston, Mass., and Fred C. Demond, of Concord, N. H. (Peabody, Arnold, Batchelder & Luther, of Boston, Mass., and Streeter, Demond & Woodworth, of Concord, N. H., on the brief), for defendants.

Before COLT and PUTNAM, Circuit Judges, and BROWN, District Judge.

PUTNAM, Circuit Judge. These cross-appeals arose out of an order of the District Court for the District of New Hampshire entering an ad interim injunction; the order being appealed from specially by the Gardiner Company, the complainant in interest, and generally by the Nashua Manufacturing Company, the latter being the respondents in interest, including the Nashua Manufacturing Company. The order was in favor of the complainant as a minority stockholder in the Jackson Company, holding 35 of the 600 shares of its capital stock,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

restraining, pending litigation, the completion of an agreement for the conveyance of the assets of the Jackson Company to the Nashua Company, in exchange for shares of the capital stock of the Nashua Company, to be distributed pro rata to the stockholders of the Jackson Company, with some details to be hereinafter described. The order was finally conditioned on the execution of a bond by the respondents in the sum of $60,000 to protect the complainant, so as not to be enforced if the bond was furnished. The respondents appealed against the entire order, and the complainant appealed against the provision giving the respondents the option to substitute the bond referred to.

[1] The fact, however, is, as we will see, that the matters involved are purely pecuniary in their character, and a guaranty bond of a proper amount would be a sufficient equivalent for the rights of the complainant, however the litigation may result; while, on the other hand, the evident financial strength of the Nashua Company renders it entirely clear that the giving of such a bond would be a purely formal matter for it. Therefore, as the order of the District Court stands, it imposes no actual hardship on either party, and we might well affirm it on that ground, without looking into the case further.

However, the facts are so simple, and evidently so incontrovertible, and the law based on those facts is so clear, that the action of this court may be wisely allowed to turn on the merits, with the probable result that the litigation will end here, instead of dragging along in a manner which should not be allowed, provided it can in any way be avoided. In consideration of the foregoing, we will state the case more fully.

[2] This bill was filed March 19, 1912, by the complainant, in behalf of itself and all other stockholders of the Jackson Company. It alleges in substance an agreement, or proposed agreement, on the part of the Jackson Company, by virtue of which the stockholders of the Jackson Company should exchange their shares of the Jackson Company stock at the rate of 1 share for 1½ shares of the capital stock of the Nashua Company; the Nashua Company to receive all the assets of the Jackson Company and assume all its liabilities. The bill also alleges that an arrangement has been made by the Nashua Company with the American Trust Company for a purchase of an amount of stock covering all the minority shares in the Jackson Company, at the price of $650 for each share, within a year. This, of course, would give each stockholder in the Jackson Company $975 for each of his shares; and apparently this was the ordinary market value of this stock. But the bill also shows that each corporation appointed a committee to ascertain the intrinsic value of the shares of each corporation; and the result was that the committee appointed by the Jackson Company made the intrinsic value of each share of the Nashua Company $2,250.37½, and of each share of the Jackson Company $3,277.51. The committee of the Nashua Company reported the same figures; and the valuation made by the Mutual Insurance Companies by common consent resulted in the same valuations as those of the committees of the two corporations involved. An examination of the specific figures of assets and liabilities fully establishes these results.

as to the intrinsic value of the shares of stock of the two corporations; and, for the purpose of this litigation, these values must be regarded as indisputable. Consequently, under the arrangement, a shareholder of the Jackson Company would be compelled to exchange his stock for stock in the Nashua Company on the basis named, or to receive in cash less than one-third of the intrinsic value of what he would surrender.

Except under rules of eminent domain, no owner of property can be compelled to dispose of it at a mere market value; but every one is justly entitled to hold it for its intrinsic value. Therefore, under the circumstances of this case, any protesting stockholders, including the complainant, were not given their free option, but were under compulsion to exchange their stock for stock in the Nashua Company, or make a substantial sacrifice of that to which they were lawfully entitled. This was practically the condition before the court in Mason v. Pewabic Mining Company, 133 U. S. 50, 10 Sup. Ct. 224, 33 L. Ed. 524, to which it was pointed out the dissenting stockholders were not obligated to submit. Without looking for the decision of any court, this proposition is so clear that it commends itself at once to every legal mind. Therefore the case stands in all respects as though the Nashua Company had combined with a majority of the shareholders in the Jackson Company to exchange the stock of the latter corporation for stock in the Nashua Company, a proposition which has been thoroughly rejected. The law, as thus established, is based on such fundamental propositions, as that a person cannot be forced into contractual relations which he has not voluntarily accepted, that it needs no support from authority. Indeed, it is settled that no ordinary phraseology in the charters of corporations involved, or in any statute, will accomplish a contrary result.

This was made clear in Re Empire Insurance Corporation, 4 Eq. L. R. 341 (1867), which has been accepted as a leading case. The rule so far as necessary to be applied here is stated in Angell on Corporations, § 499, a work so far recognized by the courts and the profession that it may well be consulted on all topics of this character. It is sufficient to say, further, that this rule has been referred to with approval in Clearwater v. Meredith, 1 Wall. 25, 39, 17 L. Ed. 604, and directly applied in Mason v. Pewabic Mining Company, 133 U. S. 50, 10 Sup. Ct. 224, 33 L. Ed. 524, already cited. In Mason v. Pewabic Mining Company the rule was applied to the same conditions as exist here, as will be seen at pages 53, 58, and sequence, of 133 U. S., 10 Sup. Ct. 224, 33 L. Ed. 524. Other aspects of the opinion in that case will be spoken of later. It is enough to say at this point that the complainant cannot be compelled to take shares of stock in the Nashua Company, or, in lieu of that, a cash value arbitrarily fixed.

[3] In reply to all these propositions, the respondents set up Bowditch v. Jackson Company, 76 N. H. 351, 82 Atl. 1014, in which the final decree was entered on April 10, 1912. That was a bill brought by other shareholders of the Jackson Company than the proponent here. It sought generally the same relief as asked for here. The proceed-

ings were disposed of generally with reference to the rights asserted here; and the bill, on consideration of the merits, was dismissed. The respondents maintain that this decision renders the question involved here technically res adjudicata. That clearly is not so.

We will not consider whether any bill touching the present topic would be one in which complainants could represent a class, as they might with reference to a bill involving questions which materially affect the corporation itself. The question here relates substantially and mainly to the several interests of several stockholders, some of whom may prefer to accept the consolidation of the corporations, while others may not, according to the several opinions of each. It is enough to say now that the bill in the state court was filed by specific stockholders, with no allegation that it was filed in behalf of other stockholders who might join. To operate as an estoppel against other stockholders, this allegation is admittedly necessary on the fundamental principles of equity proceedings; because, while, in a bill filed in behalf of all stockholders, any stockholder may, if not guilty of laches, intervene as of his own right, intervention cannot be allowed in a bill not filed in behalf of all stockholders, except as a matter of discretion on the part of the court. Thus, this distinction will be seen to be a matter of fundamental importance. This rule is also the settled rule in New Hampshire, as specifically stated in Marsh v. Eastern Railroad Company, 40 N. H. 548, 567, 77 Am. Dec. 732. So it is clear that the proceedings in New Hampshire cannot be regarded as an estoppel with reference to the present suit.

[4] Nevertheless it is urged that, in dealing with a motion for an ad interim injunction, the court will be influenced by the previous action of another court, or of the same court, between different parties with reference to the same subject-matter. This rule applies to proceedings as between two different federal courts, but is of little force as between state courts and federal courts, because the application of it there would be in the face of the constitutional and statutory provisions which give citizens of different states, and aliens, peculiar privileges in litigating in the federal courts. We certainly could not apply it to a case where the facts and the law are so absolutely and positively clear as they are here; but we should also add that it is very plain that the attention of the New Hampshire court was not brought sharply to the precise points to which we are giving effect. Indeed, the opinion in Bowditch v. Jackson Company starts with the proposition that the main question is the general one of the right of a majority of the stockholders of a corporation to wind up the corporation although its charter life has not expired. The point on which we let this case turn was alluded to incidentally in the opinion; and it was remarked that it was not necessary to examine it. The opinion went on that, assuming that such a position would be well taken, it was avoided by the provision that a stockholder might have cash, instead of stock in the Nashua Company.

Neither can this New Hampshire decision bind us. It was not based on any prior lines of judicial action in New Hampshire, but it was first reasoned out according to the best judgment of the court in lit-

igation which arose after the rights of the parties here were fixed. Consequently, on settled rules, the decision affects us only as for sound reasons we accept the same as fairly representing our own judgment.

[5] The question of laches is raised; but even as with reference to statutes of limitations, as applied to suits brought subsequently to suits which for some reason have failed, in view of the fact that this bill was filed before final adjudication in New Hampshire, we think the equitable rule is that the complainant here was presumably entitled to await the result of that litigation; so, in view of the short period which existed between the proceeding of the corporations complained of and the filing of this bill, less than a year, the complainant cannot be charged with laches.

Notwithstanding the fact that in Mason v. Pewabic Mining Company, 133 U. S. 50, 10 Sup. Ct. 224, 33 L. Ed. 524, already cited, the minority stockholders were held to be entitled to have the corporation wound up, and its assets disposed of for cash, or its equivalent, yet the equitable rule properly applicable here is of such a stringent character that the complainant, so long as it has gone into equity, must be content to receive, under the circumstances, a fair equivalent of the intrinsic value of its shares, to be ascertained by the court in such manner as equity requires. Therefore it is that we state that the complainant would be sufficiently protected by the giving of the bond which is made a condition of the continuance of the injunction. The complainant, having gone into equity, must be willing to do equity, and is not entitled to the sharp remedies which it might have obtained if content to proceed according to the common law. No absolute rule otherwise is found in the Pewabic Mining Company Case. The rule stated there is given only as a general one, and the opinion of the court, at the foot of page 63 of 133 U. S., and on page 228 of 10 Sup. Ct. (33 L. Ed. 524), affirms that it does not say that there may not be circumstances which will justify a decree ascertaining the value of the protesting stock; and Mr. Justice Bradley, one of the most eminent equity lawyers the country ever knew, was of the opinion that the court went too far in ordering a sale, even in that particular case.

The Gardiner Company assignment of errors alleges that the court erred in holding that a bond for the payment of money would be an adequate protection for the complainant, in the view that the complainant should ultimately prevail, and also in holding that a bond for $60,000 would be adequate in amount. The last proposition was merely restated, without any explanation why that sum is deficient. So far as the amount claimed is concerned, nothing was said about this orally; but the brief reasserts it, with merely the statement that the complainant's stock was of the value of $112,000. It gives us no other explanation of any claim that it needs a bond of a larger amount for its protection. It maintains that, under the ruling in the Pewabic Company Case, the relief which it should receive must be the conversion of all the assets of the Jackson Company into cash. In view of the fact that we have met the Pewabic Company Case, and are of the opinion that a payment of an amount equal to the intrinsic

value of the complainant's stock, to be ascertained by the court, would be the only remedy which the complainant can receive under equitable rules, and in view of the undoubted ability of the Nashua Company to respond to any pecuniary judgment which may be entered against it, so that apparently the indemnity bond would be needed only to cover margins and unexpected difficulties, we think the amount fixed by the District Court is ample. We will add, however, that, in accordance with rule 22 of the District Court, which seems to be in harmony with section 129 of the Judiciary Act of 1911 (Act March 3, 1911, c 231, 36 Stat. 1134 [U. S. Comp. St. Supp. 1911, p. 194]), it is probably within the power of the District Court to enter any further. orders which in the development of circumstances may be necessary for the protection of any of the parties concerned. Certainly, if there is any doubt about this, this court can give leave for such further proceedings in the District Court as may prove desirable.

In each appeal judgment will be entered as follows:

The order of the District Court is affirmed; but, as both parties appealed, and neither prevailed, no costs of appeal will be allowed to either.

## On Petition for Rehearing.

PER CURIAM. [6] This case is so important that we deem it proper to notice the claim in the petition for rehearing that our action by our opinion and order of October 22, 1912, was practically coram non judice, in that we discussed the merits of the case. While in disposing of a petition for an interlocutory injunction it is ordinarily inadvisable to plunge into the merits of the case, if it can be avoided, nevertheless it is the right of the court to dispose of such a petition on the merits, or on collateral considerations, as the case may justify.

[7] In this case we were furnished at the hearing by the Jackson Company with a brief of 45 pages, signed by an imposing array of very able counsel, and dealing mostly with the merits. Indeed, the brief went so far as to demand that we should not only dissolve the injunction order, but that we should, on the merits, dismiss the bill. Not only that, but the brief contained the following language:

"The only substantial issue of fact attempted to be raised by the averments of the complainant's bill is the charge that the consideration for the sale is inadequate when measured in terms of cash. Every other question which the bill presents is a pure question of law."

The questions of law involved, as we said in our opinion, are very simple from the standpoint of the federal courts; and the only question of fact which the brief said was attempted to be raised by the averments of the complainant's bill was one upon which the proofs were entirely on the side of the Gardiner Investment Company, with none whatever furnished by the other party. All the respondents produced was the opinion of the Supreme Court of New Hampshire and an opinion expressed by committees, neither of which were evidence, especially in the face of detailed facts showing, so far as this record is concerned, the result stated in our opinion; and this without con-

tradiction. The bill alleged specifically that the proposition for a consolidation was based upon merely—

"the approximate market value of the shares of the Jackson Company, bearing no fair relation to the value of the actual distributive share of the shareholders in the actual assets of the said company."

Here was a direct proposition upon which the bill was based, with evidence of the kind shown in our opinion, and no evidence, properly so described, to contravene it. The result on the record before us was inevitable.

The record contained no answer by the Jackson Company or by the Nashua Manufacturing Company. On the settled rules of equity practice, the attitude of a bill with reference to an interlocutory injunction may be essentially changed by the filing of an answer, and a new record may then be made. Whether this will prove to be the result in the present case, if answers are filed and the bill goes to an issue, we are not now called on to consider.

The petition of the Jackson Company for rehearing, filed on November 11, 1912, is denied; and a mandate will issue forthwith.