JACKSON CO. et al. v. GARDINER INV. CO. et al.

(Circuit Court of Appeals, First Circuit. November 19, 1914.)

No. 1067.

CORPORATIONS (§ 584*) — LIQUIDATION — POWER OF MAJORITY — REVIEW BY COURTS.

A majority of the stockholders of the J. Company, having decided to liquidate the company, in good faith and without fraud, in corporate meeting voted to sell its assets to the N. Company for shares of stock in the N. Company of the market value of $585,000, which was to be distributed among its stockholders on the basis of 1½ shares of stock in the N. Company for each share in the J. Company; the N. Company also assuming all debts and liabilities of the J. Company. The market value of 1½ shares in the N. Company was equal to the market value of a share in the J. Company, or $975. An arrangement was also made by which the stockholders in the J. Company might receive $975 per share, instead of taking stock in the N. Company. In a suit to enjoin the sale, it was found that the market or sale value of the assets of the J. Company, as represented by a share of stock, was $1,174.94 when the sale was made, and $1,494.65 two years later, and that the replacement value was $2,-721.25 when the sale was made. *Held*, that the transaction was a sale of the assets of the J. Company, and not an exchange of such assets for stock, and hence the value of the stock two years after the sale and its replacement value were immaterial, and the difference between the market value at the time of the sale as found, and the valuation placed thereon by the majority, was too slight to show gross mismanagement, and therefore the decision of the majority shareholders, made in good faith and without fraud, was not subject to revision and reconsideration by the court, and it would not enjoin the sale.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2343–2347; Dec. Dig. § 584.*

Acquisition by corporation 'of stock of other corporation, see note to Anglo-American Land, M. & A. Co. v. Lombard, 68 C. C. A. 120.]

Putnam, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of New Hampshire; Edgar Aldrich, Judge.

Suit by the Gardiner Investment Company and others against the Jackson Company and others. From a decree in favor of complainants, defendants appeal. Modified.

Frank S. Streeter, of Concord, N. H. (Streeter, Demond, Woodworth & Sulloway, of Concord, N. H., and Peabody, Arnold, Batchelder & Luther, of Boston, Mass., on the brief), for appellants.

Burton E. Eames, of Boston, Mass. (Tyler, Corneau & Eames, of Boston, Mass., and Hollis & Murchie, of Concord, N. H., on the brief), for appellees.

Before PUTNAM, DODGE, and BINGHAM, Circuit Judges.

BINGHAM, Circuit Judge. When this case was previously before the court (200 Fed. 113, 118 C. C. A. 287), on cross-appeals arising out of an order of the District Court for the District of New Hampshire entering an ad interim injunction, the answer of the respondents had not been filed, and a hearing upon the merits had not been had. Since

then certain parties other than the original complainant have been permitted by leave of court to come in either as interveners or under a supplemental bill of complaint, and various pleadings have been filed, including the answer of the respondents. The case has been sent to masters, who have heard the parties upon the merits and made their report. Upon the report a final decree has been entered in the District Court enjoining the carrying out of the sale of the assets of the Jackson Company to the Nashua Company, as voted on May 10, 1911, except upon payment to the complainants of the sum of $3,228.13 for each share of stock of the Jackson Company held by them. The case is now here on appeal by the respondents from this decree, assigning various errors.

Upon the prior appeal the respondents took the position that the District Court should have dissolved the injunction and dismissed the proceeding, on the ground that the controversy was res judicata by reason of a similar suit brought by other stockholders in the state court of New Hampshire (Bowditch v. Jackson Co., 76 N. H. 351, 82 Atl. 1014, Ann. Cas. 1913A, 366), raising the same issue, and for want of equity in the bill. It was held that the decree in the state court did not render the questions here involved, and as between these parties, res judicata; that the bill in that court was brought by specific stockholders, without an allegation that it was brought in behalf of other stockholders who might join; and that in the absence of such an allegation other stockholders could not intervene as of their own right. It also appears from the opinion then delivered that the court understood from the allegations of the bill that, while each stockholder of the Jackson Company, who declined to take stock in the Nashua Company in payment of his interest in the assets of the Jackson Company on the basis of 1½ shares of Nashua Company stock for one of the Jackson Company, might have $975 in cash for his interest in those assets as represented by each share of Jackson Company stock, free from all indebtedness, nevertheless that sum was "apparently the ordinary market value" of each share of the stock, and not its intrinsic value as represented by the assets of the Jackson Company, which the bill alleged was of the value of $3,277.51, and that as under this "arrangement a shareholder of the Jackson Company would be compelled to exchange his stock for stock of the Nashua Company on the basis named, or to receive in cash less than one-third of the intrinsic value of what he surrendered," there could be no doubt about the equity of the bill and the power of the court to afford relief; that the complainant, having come "into equity, must be content to receive, under the circumstances, a fair equivalent of the intrinsic value of its shares, to be ascertained by the court in such manner as equity requires," and was not entitled to have the court order an auction sale of the assets, as requested in one of the prayers of the bill.

We therefore understand, from the allegations and prayers of the bill and from the decision of the court, that what the original complainant sought by the bill, and what the court meant by intrinsic value of the stock, was what the assets back of the stock would bring at a fairly conducted sale, or its equivalent, as ascertained by the court upon the reception of evidence leading to that conclusion.

In the masters' report, it is found that there was no fraud or bad faith on the part of either the Jackson Company or the Nashua Company, or their officers, with relation to the sale; that the offer of the Nashua Company (which was accepted by the stockholders of the Jackson Company, the vote being 490 shares for and 104 shares against the proposition, 6 shares not being represented) provided for the purchase of the property, franchises, and good will of the Jackson Company by the payment therefor of 900 shares of Nashua Company stock, of the market value of $585,000, and the assumption of all its debts and liabilities, amounting to $1,522,679.71; that the market value of 1½ shares of the stock of the Nashua Company was equal to the market value of one share of the Jackson Company stock, or $975, and that the 900 shares of Nashua Company stock were to go into the treasury of the Jackson Company, and were to be distributed among the stockholders of that company, on the basis above stated, if they consented to take it; that stockholders owning 460 shares of Jackson Company stock consented, thus taking care of 690 shares of the Nashua Company stock; and that an irrevocable offer under seal, to continue for one year, was procured, running from the American Trust Company to the Jackson Company, agreeing, in case the trade went through, to buy the remaining 210 shares of Nashua Company stock, or any part thereof, that was not taken by stockholders of the Jackson Company, and to pay therefor the sum of $650 a share, thus assuring to every stockholder of the Jackson Company, who might decline to take Nashua Company stock, the sum of $975 for his interest in the assets of the Jackson Company as represented by each share of stock owned by him. It is thus seen that a majority of the stockholders of the Jackson Company, having decided to liquidate the company, in pursuance of this purpose, and in good faith and without fraud, entered into an agreement to sell the assets of the company for 900 shares of Nashua Company stock, of the market value $585,000, and the assumption of all its debts and liabilities, and made provision whereby a stockholder who had not already consented to take stock might have cash, which, in the case of the owner of one share, would be the sum of $975. The transaction, therefore, though in form an exchange of the assets of the Jackson Company for stock in the Nashua Company, was in substance a sale for $585,000, and the assumption of the debts and liabilities of the Jackson Company, with a provision that stockholders who desired should receive stock, and those who did not so desire should be paid in cash.

The masters have found that the market or sale value of the assets of the Jackson Company as represented by a share of stock in that company was in May, 1911, when the sale was made, $1,174.94, or $199.94 more than the value fixed by the majority in their sale to the Nashua Company; and that their market or sale value in May, 1913, was $1,-494.65. It was also found that their replacement value in May, 1911, was $2,721.27, and in May, 1913, was $3,228.13. The findings as to replacement values are of no consequence, for, as above pointed out, we are only concerned with market or sale values; and the finding as to the market or sale value of the assets in May, 1913, is unimportant, for the case as now presented is not one of an exchange of assets for

stock in the Nashua Company, as it was interpreted to be by the court when it was here on the previous appeal, for then it appeared, according to the allegations of the bill, that the interest of a Jackson Company shareholder was of the value of $3,277.51, and that the vote of the majority in fixing its value at $975 could result in nothing else than in compelling the dissenting Jackson shareholders to take stock in the Nashua Company, a thing which was beyond the power of the majority to require them to do. As the transaction was a sale, and the sale was not illegal, it is evident that the value of the Jackson Company assets must be determined as of the date of the sale.

The only remaining question of importance is whether the decision by the majority shareholders in the Jackson Company that the market or sale value of the assets of the Jackson Company, as represented by a share of its stock, was $975, is subject to revision and reconsideration by the court; it having been made in good faith and without fraud. This was one of the questions under consideration in Bowditch v. Company, 76 N. H. 351, 365, 82 Atl. 1014, Ann. Cas. 1913A, 366. It was there pointed out that, when a corporation is in the hands of the court for the purpose of liquidating its assets, it is open to the court to say whether the assets should be sold at auction, or a valuation should be placed upon them under its direction. But that liquidation was not necessarily a judicial proceeding, and judicial action with reference to it could not be invoked except for cause. It was there said:

"It is not a matter of course that a court of equity will interfere in the liquidation of the assets of a corporation or firm by a majority in interest. It is the right of the parties to conduct this part of their business for themselves. Before this right can be interfered with, it must be made to appear that the majority are assuming to exercise powers not conferred upon them, or are proceeding in a manner not authorized by law."

Then, further along, it is said:

"The majority are trustees, with not only the power, but also the positive duty, to liquidate the assets;" and having determined in good faith to negotiate a sale, and for a reasonable price, there is "no equity in the claim of a dissatisfied minority that the trust should be administered in accordance with their views and against the wishes of the majority;" that, "the sale being one the majority have power to make, and being free from all taint of fraud or irregularity, a court of equity will not interfere unless there be such inadequacy of price as to amount to proof of gross mismanagement." 76 N. H. 366, 367, 82 Atl. 1021 (Ann. Cas. 1913A, 366).

With these views we fully agree; and we are also of the opinion that the majority, having in the exercise of an honest business judgment voted to sell the assets of the Jackson Company for $585,000, and the assumption of its debts and liabilities, amounting to $1,522,679.61, and having fixed, as above stated, the price which a dissenting stockholder was to receive for each right held by him in the assets of the Jackson Company at $975, could not be said to have determined upon a value that was so inadequate as to amount to proof of gross mismanagement; that in a transaction of this magnitude the difference in value as fixed by the majority, and as found by the masters, is so slight that it is quite as probable the valuation was correct as that it was erroneous; that it discloses, if anything, nothing more than an error of judgment, and would not authorize a finding of gross mismanagement.

217 F.—23

The other questions raised by the respondents' assignments of error are of minor importance, in view of the conclusions here reached, and we pass them by. It is to be observed, however, that inasmuch as the offer of the American Trust Company was to expire in one year from June 8, 1911, and may not have been renewed, the injunction granted in this case should be so modified as to make it conditional upon the payment to the complainants of $975 a share, instead of $3,228.13.

The decree of the District Court is reversed, and the case remanded to that court, with directions to enter a decree or decrees dissolving the injunction and dismissing the bill with costs to the respondents, appellants, upon payment, or the giving of security by them, in such form as the District Court may approve, for the payment to the complainants, appellees, mentioned in the third paragraph of the decree hereby reversed, of the sum of $975 for each and every share of stock in the Jackson Company held by said complainants, appellees; and said appellants recover their costs of appeal.

PUTNAM, Circuit Judge (dissenting). The opinion of the court necessarily plants itself for its support solely on the action of the stockholders of the Jackson Company, at a meeting where they voted to exchange the stock of the Jackson Company for shares of stock in the other corporation. No other corporate action was taken. This, in the prior opinion of the court in this same case, was held to be ultra vires, and therefore void, and so goes for nothing. The report of the masters, which subsequently followed the prior opinion of this court, fixed alternative values for the shares of stock of the Jackson Company, at alternative dates. It was strictly in accordance with the prior action of this court that one of those amounts should be accepted as the value the dissenting stockholders should receive. On the other hand, two judges of the court having changed since the first hearing, the views expressed by the court in the first opinion, though not formally thus ruled, have been repudiated, and the action of the majority of the stockholders, which we then held to be invalid, has been made the basis of the present final judgment.

As all the facts upon which the court now relies appeared by the record when the case was first heard, the judges who united in the first judgment thus became chargeable with the useless and vain and expensive and troublesome prolongation of the litigation. The judgment now entered might just as well have been entered as the result of the earlier hearing, if the court, as then constituted, had deemed it proper.

The rule which the court now applies is a wholesome rule when applied to proper circumstances; but it involves a lawful action of the corporation at a meeting duly held, when everybody, including the minority and majority, may have a proper hearing, and a consequent action, of a quasi judicial character, on the specific proposition offered for adoption. Such a meeting was had; but no proposition for sale of shares of stock in the corporation for cash was offered or adopted. Subsequently an offer was made by the American Trust Company of a price per share which the court now fixes, which, under the circumstances, was an unreasonable amount to obtain for it. As a result, what happened was a force-put, by which the minority stockholders

were forced to fix a price for stock which is below any admitted value for it, and far below that which the minority shareholders claim. At any rate, the price now fixed is an artificial and arbitrary one, admittedly varying from the real value, although claimed to be but little less than the real value. This comes about by the force of the power of the majority, instead as the result of a deliberate consultation after a conference among all shareholders where all might be heard.

Notwithstanding the fact that the rule referred to would be binding in reference to a reasonable proposition where all are consulted, followed by a formal vote of sale for cash, even though a minority did protest it; the rule sought to be applied here has no relation to proceedings of the character which in fact occurred; but it can apply only as a result of regular proceedings with reference to a vote for a sale for cash at a lawful meeting, as to which there might be full consultation, even though no complete concurrence. Under the circumstances, the position is an open one for a sale to be fixed by the court at a reasonable price, of the kind indicated by the prior opinion at several points, namely, the "intrinsic value."