PRESSED STEEL CAR CO. v. UNION PAC. R. CO.

(District Court, S. D. New York. May 8, 1917.)

1. COURTS ⬤⟿351—FEDERAL PRACTICE—DISCOVERY.

Under equity rule 58 (198 Fed. xxxiv, 115 C. C. A. xxxiv), the proper practice under a bill of discovery is for plaintiff to plead those facts which entitle him to a discovery and annex such interrogatories as he wishes defendant to answer. If defendant does not dispute plaintiff's right to some discovery, but objects to some or all of the interrogatories, he will make those objections and bring them on for hearing, but is not subject to the old rule that, if he answers one, he must answer all. If he disputes plaintiff's right to any discovery, he will plead in an answer such facts as he deems apposite, and obtain an enlargement of his time to answer the interrogatories until plaintiff's right to discovery is determined.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 924.]

2. COURTS ⬤⟿351—FEDERAL PRACTICE—DISCOVERY.

Affirmative defenses to a bill of discovery must be confined with the most narrow and technical rigidity to such as the precedents have recognized, and do not include, where the bill is in aid of an action at law, matter which might be a good defense to such action.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 924.]

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. COURTS** ⊜351—FEDERAL PRACTICE—DISCOVERY—PRODUCTION OF DOCU-
MENTS.

Under a bill of discovery in aid of an action at law, defendant can be required to produce only such documents as contain evidence material to plaintiff's case.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 924.]

In Equity. Bill by the Pressed Steel Car Company against the Union Pacific Railroad Company for discovery in aid of an action at law. On motion to strike out answer. Motion sustained.

See, also, 240 Fed. 135.

Motion to strike out the answer of the defendant to the plaintiff's bill of discovery. The bill alleged that the plaintiff had commenced an action at law in this court, which was still pending and at issue, and annexed a copy of the complaint. The complaint at law alleged that the parties had entered into a contract under which the defendant promised for a stated period to pay the plaintiff $10 upon the completion of any freight cars made for the defendant or any of its constituent railways, which should embody "any and all of the designs or devices covered by United States letters patent then owned or controlled by the plaintiff, or which the plaintiff thereafter might own or control," including a list of 11 specified patents set forth in the contract. The complaint at law further alleged that the defendant in the period covered by the contract had either directly or through its constituent railways built "14,464 freight cars which contained designs or devices covered by one or more of the United States letters patent owned or controlled by the plaintiff during said period," including 11 patents specifically set forth. The complaint at law also contained two other causes of action, but for the purposes of this motion it is not necessary to set them forth.

The bill for discovery then proceeded to allege that it had no means of ascertaining the constituent railways of the defendant without a discovery from the defendant, nor what freight cars it had built embodying the patents, nor the contracts made for their construction, nor the drawings and specifications upon which they were built. Therefore it annexed to the bill ten interrogatories, of which the first four inquired in general what were the defendant's constituent railways, and in especial whether certain named railways were constituent. The other interrogatories inquired generally for the production of the drawings, contracts, specifications, bids, and delivery dates of all freight cars built for the defendant, or any of its constituent companies, during the period in question.

The answer to the bill of discovery alleged that the date of expiry of 1 of the 11 patents mentioned specifically in the contract was before the contract itself expired, and that before the date of such expiry it had not, nor had any of its constituent companies, built any freight cars which "contained any design or device covered by said patent," except as already accounted for by the defendant. It alleged that none of the freight cars built during the period "contained any design or device covered" by any of the other patents specified in the complaint, except the Hansen patent, or any at all similar to them. It alleged that all "common standard" cars mentioned in the contract between the parties, both those built before and those built after the date of the contract, had been paid for at the stipulated royalties, but that this type was abandoned in the year 1910, and had not since been made; that four-fifths of the cars built during the period in question contain a device known as the Bettendorf underframe and one-fifth contain other well-known underframes; that the Bettendorf underframe was the subject of a suit under the Hansen patent specified in the complaint at law, in which suit the said Hansen patent was declared void; that, as the said patent was not mentioned in the contract, its validity was not conceded by the defendant, and no royalty is therefore due under it.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

W. C. Margeson, of New York City, for the motion.

George A. Ellis and James R. Sheffield, both of New York City, opposed.

LEARNED HAND, District Judge (after stating the facts as above). [1] Before the new rules, and under the old course of equity, the necessity of a plea to a bill arose from the rule that, if the defendant once consented to answer, he must answer fully, and that therefore in his answer he must respond to all the charges of evidence contained in the bill. This has now been changed by the abolition of pleas (rule 29, 198 Fed. xxvi, 115 C. C. A. xxvi), and by the provisions that discovery shall be by interrogatories, to which specific objections may be taken (rule 58, 198 Fed. xxxiv, 115 C. C. A. xxxiv), and that the pleadings shall contain no evidence, but the "ultimate facts." As a result, the proper practice in a bill of discovery is now as follows: The plaintiff will plead those facts which entitle him to a discovery from the defendant, and will annex such interrogatories as he wishes the defendant to answer. If the defendant does not dispute the plaintiff's right to some discovery, but objects to some or all of the actual interrogatories annexed to the bill, he will make those objections under rule 58, and bring them on for hearing before the judge. He is not subject to the rule that, by answering one, he must answer all. If, on the other hand, he disputes the plaintiff's right to any discovery, he will plead in an answer such facts as he deems apposite, and obtain from the court, under rule 58, an enlargement of his time to answer the interrogatories until the plaintiff's right to discovery is established.

[2] The latter course the defendant here has undertaken, and the question therefore arises whether his answer shows that the plaintiff is not entitled to any discovery. Equity might have held that the plaintiff's right to discovery in aid of an action at law depended only upon the existence of an issue to which the defendant's testimony would be relevant. Langdell, Equity Pleading, § 168. That would have been the more rational theory, but it was not the one actually adopted. Instead, equity required the plaintiff in such a bill to set forth his case upon the merits, and it allowed the defendant, not only to demur, so raising the validity of the plaintiff's action at law (Langdell, § 176), but even to plead facts which would defeat that action. Of course, consistently it should have allowed the plea to be traversed and the cause to go to a hearing. Moreover, after negative pleas to bills for relief became allowable, they should have been allowed to bills for discovery as well. However, there is no instance of a negative plea to a bill for discovery, nor any of a hearing or decree upon such a bill. The probable reason of this failure of consistency was the absurdity of trying out upon the evidence the merits of the controversy upon the merely ancillary inquiry as to whether a defendant should be obliged to give any testimony at all. With a fortunate disregard of principle, the courts merely allowed some affirmative defenses, and apparently never tried out the truth even of these. These defenses are somewhat arbitrarily stated in the books (e. g., Mitford & Tyler, Pleadings & Practice in Equity, § 2, pt. 2, p. 368), and seem for the most part to be facts going to the jurisdiction, to the plaintiff's

title, to the statute of limitations, or to the defense of purchaser for value. The defendant wishes to extend the principle, and assumes that any good defense to the action at law may be pleaded to the bill. The result is so preposterous, however, and the whole theory so contrary to desirable results, that affirmative defenses to such bills must be confined with the most narrow and technical rigidity to such as the precedents have recognized. It is quite enough for the disposal of this case to observe that none of the conventional defenses are contained in this answer. It follows that the answer is bad, and will be struck out, and an order to that effect will pass.

The former opinion, directing the defendant to answer the first, second, third, fourth, fifth, and seventh interrogatories, would therefore be followed by an order, were it not for the fact that, as respects the fifth and seventh interrogatories, I had overlooked some important considerations. I assumed that these called upon the defendant to make answers relevant to the controversy, but that was an error. Instead of requiring the defendant to answer whether it had drawings or specifications of cars built in accordance with any of the devices covered by the plaintiff's patents, these two interrogatories require it generally to answer whether it has built any cars of any kind during the period in question. Such an inquiry is much wider than is relevant to the dispute between the parties, and, if it were followed by an order for production under rule 58, would require the defendant to produce all its drawings and specifications for the mere purpose of a roving inspection. The plaintiff may ask whether the defendant has built any cars containing any of the devices of any or all of the patents owned by it during the period of the contract. This it may ask with as much specification and detail as it pleases; the minuteness of the questioning will measure the success with which the plaintiff searches the defendant's conscience.

[3] If the defendant can be brought to acknowledge the possession of any documents which appear to be pertinent to the issues, it will be required to produce them, but not until it does. Any other rule would enable the plaintiff to fish among all the documents which the defendant may have for the purpose of picking out those on which it chooses to sue. Such a course is wholly unauthorized, not only under the old practice (Langdell, §§ 204, 205), but equally under rule 58, which requires a party to produce only those documents which contain evidence material to the case or defense of his adversary.

The plaintiff will have leave to frame and keep reframing interrogatories till it has extracted from the defendant all the information which it possesses. Much the most convenient way would be for the parties to agree upon a master and allow the plaintiff an oral examination. This, however, I cannot compel; but the same result may probably be obtained, though it must be confessed with the maximum of expense in time and labor, by allowing interrogatories to be renewed as often as justice requires. If that does not serve, the plaintiff must rely upon such rights as he will have at the trial under Revised Statutes, § 724 (Comp. St. 1916, § 1469).

It follows that, although the answer will be stricken out, the de-

fendant need not answer the fifth and seventh interrogatories, but the plaintiff will have the right, within 30 days after the order is entered, to frame such further interrogatories as it may be advised.