**E. I. DU PONT DE NEMOURS & CO. v. BYRNES.**

District Court, S. D. New York.
Dec. 11, 1939.

36

Wm. S. Pritchard, of New York City, for petitioner.

Wm. S. Pritchard, of New York City, and C. H. Biesterfeld, of Wilmington, Del. (Arthur G. Connolly, of Wilmington, Del., of counsel), and Kenyon & Kenyon, of New York City, for respondent.

Clarence Parshall Byrnes, of New York City, in person.

HULBERT, District Judge.

The petitioner will be referred to as Du-Pont and the respondent as Byrnes.

This motion brings up for consideration objections to certain interrogatories propounded by DuPont, who seeks a declaratory judgment (Judicial Code, § 274d, Sec. 400, Title 28, U.S.C.A.) that the process used and the product produced by DuPont in the manufacture of sulphuric acid esters* of high normal primary alcohols does not infringe U. S. Letters Patent No. 2,085,500, issued to Byrnes, as Trustee, June 29, 1937, for treatment of oxygen derivatives of hydrocarbons and in which aliphatic hydrocarbons predominate.

The answer to the petition sets up three defenses, the third by way of counterclaim, alleging infringement of five patents. There are three paragraphs in that plead-

---

* An ester is a compound ether derived from an oxygenated acid.

ing to which the interrogatories are directed, to-wit:

"Second Defense

"11. The Amended Petition, even when taken with Petitioner's Bill of Particulars, does not disclose material and relevant facts necessary to a determination of the issue of infringement raised thereby, and does not allege that it is a disclosure of all acts of Petitioner necessary to a determination of the issue of infringement so raised; and Petitioner cannot be adjudged not to infringe unless it has alleged and proved that all material and relevant facts concerning Petitioner's uses, processes and products are before the Court.

"Third Defense

"Counterclaim

"13. The following Letters Patent of the United States were duly and legally issued to Respondent, Clarence Parshall Byrnes, Trustee, respectively on the dates indicated, and since said dates said Respondent has been and still is the owner thereof, viz:

| Patent Number | Title | Date of Issue |
|---|---|---|
| 1,681,238 | Purifying Partial Oxidation Products, | Aug. 21, 1928 |
| 1,753,516 | Treating Liquid Partial-Oxidation-Product Mixtures and Products Thereof | Apr. 8, 1930 |
| 1,894,352 | Method of Treating Complex Liquid Partial Oxidation Products and Articles Produced Thereby | Jan. 17, 1933 |
| 1,948,161 | Partial Oxidation Products, | Feb. 20, 1934 |
| 2,085,500 | Treatment of Oxygen Derivatives of Hydrocarbons in Which Aliphatic Hydrocarbons Predominate. | |

"14. Petitioner, since the issuance of said Letters Patent and each of them, has been for a long time past and still is infringing those Letters Patent, and each of them, by making, using and selling neutralized sulphated or sulphonated oxygen derivatives of hydrocarbons embodying the inventions, and made by processes, patented in said Letters Patent, and will continue to do so unless enjoined by this Court.

"Wherefore, the Respondent prays that the prayers of said Amended Petition, and each of them, be denied; and Respondent demands a preliminary and final injunction against further infringement by Petitioner, and those controlled by Petitioner, and an accounting for profits and damages and an assessment of costs against Petitioner."

A counter motion brings up for consideration objections to certain interrogatories propounded by Byrnes.

This proceeding was instituted June 9, 1938, but issue was not joined until October 2, 1939, owing to intervening procedural steps, including an appeal. 2 Cir., 101 F.2d 14.

The service of Du Pont's reply upon Byrnes, October 2, 1939, was accompanied by 34 interrogatories.

Byrnes responded to Nos. 3, 4, 5, 19, 20, 30 and 31, but objected to all others.

No claim of privilege was made, the grounds of objection being that Byrnes now seeking to sustain the validity of his patents and their claimed infringement should not be limited in his efforts to investigate the prior art of which only a few of the citations alleged in the reply of DuPont's were not set up in DuPont's petition, and that he should not be prevented from first exhausting his right of discovery and going forward with his proofs and should not be required to construe his patents and disclose the theory of his case.

Byrnes' interrogatories to DuPont are 32 in number, many of which have varying subdivisions. DuPont has responded to 21, 24, 29 and 30, but objected to all others on very broad grounds, among which are—the disclosure of secret formulae, and the disclosure of information during a period of six years preceding the filing of the petition instead of the filing of Byrnes' counterclaim, and inability to determine the meaning of chemical terms used in Byrnes' patents.

The Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, effective September 16, 1938, made drastic changes in the practice in the United States District Courts. In some of our courts the policy was to liberalize the proceeding under Equity Rule 58, 28 U.S.C.A. following section 723, within its existing limitations, while in others the rigidity of strict construction was tenaciously adhered to with resulting confusion. Whether discovery should be required rested to a considerable degree in the discretion of the judge, and the allowance of interrogatories and cross interrogatories depended upon his discernment between practical and theoretical considerations.

Mr. Justice Cardozo observed: "The law of discovery has been invested at times with unnecessary mystery. There are few fields where considerations of practical convenience should play a larger role." Sinclair Refining Co. v. Jenkins Petroleum Process

Co., 289 U.S. 689, 53 S.Ct. 736, 737, 77 L.Ed. 1449, 88 A.L.R. 496.

Equity Rule No. 20 authorized an order requiring the pleader to particularize ultimate facts; Rule 25 restricted the pleader to ultimate facts; Rule '58 provided for discovery of evidentiary matter material to the issue. To distinguish between "ultimate" and "evidentiary" facts became a bugaboo, and the effort to reconcile conflicting opinions a bog.

The distinction between actions at law and actions in equity was obliterated by Rule 2, Federal Rules of Civil Procedure. The provisions of Rules 26 to 37 are, it seems to me, effectively applicable to every kind of civil action. Rule 33 may be more laborious and perhaps not as effective although probably less expensive but it has swept away restrictions which had encrusted and barnacled Equity Rule 58, with a certain advantage to the party to be examined because he is forewarned by the service of the interrogatories and may forearm himself in their consideration en bloc in making his answers thereto.

■ As I read Rule 33, the party sought to be examined on interrogatories may request the Court for an oral examination or the Court may, in a proper case, so direct, as Judge Learned Hand expressed the wish he might have been able to do in Pressed Steel Car Co. v. Union Pacific R. Co., D. C., 241 F. 964.

Even before the new rules became effective it was said in Indianapolis Amusement Co. v. Metro-Goldwyn-Mayer Distributing Corp., 7 Cir., 90 F.2d 732, 734, that: "The purpose of discovery is to prevent clumsy or wasteful litigation."

I shall first dispose of DuPont's interrogatories.

■ No. 1 requests Byrnes to specify in detail wherein the amended petition and Petitioner's bill of particulars do not disclose material and relevant facts necessary to a determination of the issue of infringement raised thereby.

DuPont sought this identical information by a motion for a bill of particulars, which was denied, and the objection to this interrogatory will be sustained.

■ No. 2 requests Byrnes to state the claims of each of the patents which he alleges are infringed by DuPont, and which of the processes and products described in DuPont's amended petition and bill of particulars are alleged to constitute an infringement of the patents referred to in paragraph 13, and which of the claims of the patents are alleged to be infringed by each of the processes and products so referred to, specifying in detail each process and each product which Byrnes alleges infringes each of said claims.

I do not regard the compliance with this interrogatory as a construction of the patent but merely a practical effort to define and limit the issue. Objection overruled.

■ Nos. 6 to 10 inclusive. Number 6 is typical: "State whether Respondent, his predecessors, or any one in privity with them, has ever produced a mixture predominating in *normal primary alcohols* containing 8 or more carbon atoms in accordance with the alleged inventions disclosed in any of the patents referred to in said paragraph 13 or disclosed in any of the patents or patent applications referred to in the aforesaid patents." (Italics mine.)

No. 7 substitutes the words "in sulfuric acid esters of normal primary alcohols" in place of the underscored portion in No. 6.

No. 8 similarly substitutes the words "in neutralized sulfuric acid esters of normal primary alcohols".

No. 9 similarly substitutes the words "in sulfonated normal primary alcohols."

No. 10 similarly substitutes the words "in neutralized sulfonated normal primary alcohols."

If such interrogatories are answered in the affirmative, subdivision (a) requires a detailed description of each process whereby said mixtures were produced and of the composition of the same. Subdivision (b) inquires where, when and by whom and in accordance with the disclosure of what patent or what patent application was each of said mixtures produced, and subdivision (c) requires that DuPont be furnished with one-pound samples of each of said mixtures.

The objection is overruled. If Byrnes is unable to furnish the samples he shall state such inability under oath.

■ No. 11 inquires whether Byrnes, his predecessors, or any one in privity with them, has ever practiced on a commercial scale the processes or manufactured on a commercial scale the products disclosed in any of said patents and also to similarly state the details and to furnish samples.

The objection is overruled and if Byrnes is unable to furnish such samples he may so state under oath.

■■ Nos. 12 to 16 request Byrnes to state what he intends to urge or will urge at the trial what certain expressions in the several patents mean. The following relating to Patent No. 2,085,500, is typical:

(a) "liquid partial oxidation product"

(b) "partial oxidation mixtures"

(c) "partial oxidation product"

(d) "Oxygen derivatives of hydrocarbons"

(e) "aliphatic hydrocarbons"

(f) "sulfonated oxygen derivatives of hydrocarbons"

(g) "sulfonated and saponified mixture of oxygen derivatives of hydrocarbons"

(h) "saponified".

While the issuance of the patents supports the presumption of validity and the examiners in the Patent Office are presumed to be persons of special training, experience and ability, the record discloses there was a substantial controversy between the applicant and the Patent Office with respect to the inclusion of these terms in the patents allowed. The meaning of these terms will certainly be a subject of consideration and determination upon the trial and the evidence will be presented more skilfully and less wastefully and I perceive no substantial prejudice in requiring that such information be furnished in preparation for the trial, and the objections are overruled.

■ No. 17 requests Byrnes to state precisely what he asserts or claims as new or patentable in each of the claims of each of the patents in suit, and calls for an interpretation of the patent.

Objection sustained.

■ No. 18 requests Byrnes to state precisely the differences between the alleged inventions and claimed in each of the patents which he intends to urge or will urge at the trial of the action.

DuPont predicates its demand for this information upon its claim of double patenting.

Objection sustained.

■ No. 21 requests Byrnes to state whether he has or his predecessors have ever approached any parties and offered to assign any of the patents in suit, or to grant licenses or other rights thereunder, and if the answer be in the affirmative, to give the names and addresses of each of said parties; to state whether any of said parties acquired licenses or other rights, and if so, to furnish DuPont with copies of said licenses and instruments granting other rights.

The objection is overruled except as to item (d) which requires that certain information be stated if the answer be in the negative.

■ No. 22 requests Byrnes to state whether he has, or his predecessors, or any one in privity with them ever produced on a commercial scale soap substitutes; (a) describe the processes in detail and the composition of the products; (b) to state where, when, and by whom such products were produced, and (c) to furnish Petitioner with one-pound samples of each.

Objection overruled except as to (a).

■ No. 23 requests Byrnes to state whether he has, or his predecessors, or any one in privity with them, ever produced a non-commercial scale soap substitute, and to similarly furnish information as required in the previous interrogatory.

Objection overruled except as to (a).

No. 24 requests Byrnes to state the claims of each of the patents in suit referred to in paragraph numbered 14 of his counterclaim, which he intends to urge or will urge at the trial, which cover any of the products or any of the described processes for making said products, and enumerated in subdivisions (a) to (x) inclusive.

Objection overruled. See No. 11, supra.

Nos. 25, 26 and 27, which are of similar import to No. 24, are overruled except as to subdivisions (a) and (b) of No. 25, (a) of 26, and (a) of No. 27, which are sustained.

No. 28 requests Byrnes to state whether he intends to urge or will urge at the trial that any of his patents in suit disclose a process for the use of particular elements specified in subdivisions (a) to (g) inclusive.

Objection overruled. See Nos. 11 and 24, supra.

■ No. 29 requests Byrnes to specify in detail each of the patents in suit and each of the portions thereof which he alleges disclose the subject matter mentioned in the preceding interrogatories.

Objection sustained.

■ No. 32 asks Byrnes to state whether he prosecuted or supervised the prosecution of the patent applications upon which

the patents in suit issued, and if so, to specify.

Objection overruled.

■ No. 33 inquires whether Joseph Hidy James, the applicant for the patent, aided in the preparation and prosecution.

Objection overruled except as to the nature of the aid rendered by him.

■ No. 34 inquires whether Joseph Hidy James approved the amendments or other papers filed during the prosecution of any of the applications upon which the patents in suit issued, and if so, what portions he approved of and the instruments and amendments filed which he approved of.

Objection overruled.

### As to Byrnes' Interrogatories.

■ No. 1 requests DuPont to identify each and all of the raw materials or starting materials (for example, cocoanut oil, sperm oil, etc.) used by or for it since six years prior to June 9, 1938, in or for the manufacture of, neutralized and/or unneutralized, sulphuric acid esters and/or sulphonic esters of oxygen derivatives of hydro-carbons, stating, inter alia, with respect to each raw or starting material:

(a) the common name

(b) the chemical name and empirical or constitutional formula

(c) the qualitative analysis showing all constituents present in material proportions

(d) whether the raw material is rancid when subjected to hydrogenation or reduction

(e) whether the raw material is refined prior to subjection to hydrogenation or reduction, and if so, how, why and by whom it is so refined

(f) the derivation or source of each raw material and how it is obtained from its source; and

(g) whether the raw materials named are used separately or mixed, and what mixtures are employed.

Objection overruled except as to (c) (e) and (f). Respondent has heretofore been furnished with samples for analysis. It is claimed by DuPont that the raw material is purchased from others, and only the names of the vendors need be given in response to (e) and (f) and the period will be six years prior to the filing of the counterclaim.

■ No. 2 requires DuPont to state what changes have been made since its first manufacture in its raw materials, processes, products and uses.

It is claimed by DuPont that it will necessitate the revelation of a secret process.

Objection sustained without prejudice to a renewal if, after the interrogatories answered, and required to be answered, Byrnes still feels the information is essential.

■ No. 3 requires DuPont to describe in detail all processes carried out and all products made or sold by it since June 9, 1932, other than those described in the Amended Petition and Bill of Particulars which involves any of the items mentioned in subdivisions (a) to (f) inclusive.

Objection sustained as to (a), which is entirely too broad as it seems to require details of all products made or sold by DuPont, whether they have any relation to the patents in suit or not. As to (b) DuPont will not be required to give details such as the catalyst, the time or the temperature, but may answer generally. (c) (d) (e) and (f) need not be answered.

■ No. 4 requires in connection with the hydrogenation or reduction step, stating which, applied to all of the raw or starting materials mentioned in the answer to Interrogatory No. 1, DuPont detail every variable factor including, inter alia:

(a) pressure

(b) temperature

(c) time

(d) whether continuous or intermittent

(e) names of reagents employed

(f) names of solvents employed

(g) names of catalysts employed, and

(h) names of hydrolytic agents employed.

Byrnes contended on the argument that hydrogenation is a reduction action but the interrogatories seem to require DuPont to state in the alternative the step applied.

Objection sustained.

No. 5 requires a qualitative analysis.

■ Samples have already been given to Byrnes for the purpose of analysis. Objection sustained.

No. 6 requires DuPont to describe in detail the distillation or distillations to which are subjected each of all of the materials from which are obtained, in the manufacture by or for it, of the "ester products"; the fractions or materials subjected to sulphation and/or sulphonation, giving, inter

alia, details indicated in subdivisions (a) to (g).

Objection sustained as to (a); overruled as to (b) to the extent of requiring DuPont to state "the method" in broad terms; overruled as to (c) (d) and (e) and sustained as to (f) and (g).

Nos. 7, 8 (except (e)) and 9, overruled.

No. 10 calls for an opinion. Objection sustained.

No. 11. Objections sustained. See No. 4 supra.

No. 12. Objection sustained. See No. 10 supra.

No. 13 requires DuPont to state in detail the variation of the steps employed to produce from the raw esters the several commercial products, or their bases, made therefrom, giving also, inter alia, an identification of the commercial products, and the percentages of inert and active materials in such products.

This is too broad and it seems in part to have been covered by preceding interrogatories. Objection sustained except that DuPont shall state if any chemical changes have been effected and the steps employed.

Nos. 14, 15, 16, 18 and 19. Objection overruled.

No. 17. Objection sustained. See Nos. 10 and 12, supra.

No. 20. Objection sustained. See Nos. 10, 12 and 17, supra.

No. 22. (Relates to No. 21, not objected to.) Objection overruled; it may be answered "yes" or "no".

No. 23 requires DuPont to state in detail whether and how and when it examined and evaluated the product and processes brought to its attention by Joseph Hidy James, or Respondent, and if DuPont carried out said processes, a statement of when and how it did so, and with what results.

Upon the hearing before me counsel for DuPont offered to answer this interrogatory if Byrnes would stipulate that the products were, in fact, made under the patents in suit, and Mr. Byrnes having so stated, the objection was withdrawn.

No. 25 requires DuPont to state whether it has ever, and if so when and how, carried out the steps consisting in oxidizing hydrocarbons and then sulphating and/or sulphonating the resulting products either before or after fractionation of said resulting products.

This is too broad and indefinite and the objection will be sustained, without prejudice.

No. 26 requires DuPont to state in detail the respects in which the products of James Patent No. 2,085,500 are "unlike" as stated in Paragraph VI of the Amended Petition, the products of Petitioner mentioned therein.

Objection overruled. The answer to be based upon the result of the tests made.

Nos. 27, 31 and 32. Objection overruled.

No. 28. Is too broad since it requires a detailed analysis of all defects in the specifications of the patent without making any distinction between the processes and products in issue and those which are not. Objection sustained without prejudice to the reframing of a proper interrogatory.

No. 29. In so far as the interrogatory seeks to obtain a differentiation between items set forth in the bill of particulars which appear to be inconsistent or contradictory the objection is overruled.

No. 30. Objection sustained. Counsel for DuPont stated on the argument that notice of taking depositions of witnesses identified therein on December 13th had been given, and Mr. Byrnes acquiesced without prejudice to a renewal of this interrogatory.

On October 16, 1939, Byrnes served notice returnable October 27, 1939, for an order sustaining his objections to DuPont's interrogatories.

On October 26, 1939, Byrnes served his interrogatories addressed to DuPont.

Counsel for DuPont contends that answers to interrogatories 3, subdivisions (c) (d) (e) and (f); 7, 8, except (e), and 9; 14, 15, 16, 18 and 19 cannot be given until Byrnes has answered DuPont's interrogatories 12 to 16 inclusive, and that answers cannot be given to interrogatories 27, 31 and 32 until Byrnes has answered DuPont's interrogatories 2, 6 to 10, 12 to 16 and 28.

DuPont may, therefore, have ten days further time to answer such interrogatories.

The information sought by the interrogatories allowed will cover the period of six years prior to the filing of the counterclaim and whatever may have happened subsequent thereto does not affect the issue of validity or infringement. McInerney v. Wm. P. McDonald Construction Company, D.C., 28 F.Supp. 557.

Unless counsel otherwise agree, a separate order should be entered upon each motion to be settled on five days notice, unless agreed upon as to form.