## CITRO CHEMICAL CO. OF AMERICA v. BANK LINE LIMITED.

## J. C. DUFFUS & CO., Limited, v. SAME.

District Court, S. D. New York.

Feb. 8, 1941.

640

Bigham, Englar, Jones & Houston, **of** New York City (Alfred Ogden, of New York City, of counsel), for libelant.

Kirlin, Campbell, Hickox, Keating & Mc-Grann, of New York City (Michael F. Whalen, of New York City, of counsel), for respondent.

HULBERT, District Judge.

These are two motions to sustain exceptions of libelant—one in each of the above cases—to interrogatories which in the Citro case are (a) Nos. 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, and (b) 2, 18, 19, 20, 21a, 21b and 22; the latter group being identical with the exceptions in the Duffus case, Nos. 2, 4, 5, 6, 7a, 7b and 8.

There has long been a disparity in rulings of different judges upon exceptions to interrogatories in Admiralty, owing, perhaps, to the variation in the form of the questions, as well as the view point of the individual judge, but a number of active proctors have recently complained that greater uncertainty exists since the adoption and application of the new Admiralty Rules, 31, 32, 32A, 32B and 32C, 28 U.S.C.A. following section 723, for which the writer is perhaps in part at fault.

Judge Mandelbaum, in American Mfg. Co. v. The Exermont and American Export Lines, D.C.S.D.N.Y., 1 F.R.D. 574, 575, decided September 26, 1940, said: " * * * Certainly the discovery of the truth in a suit in admiralty is just as much the purpose of the admiralty rules of practice and procedure as it is of the Federal Rules of Civil Procedure in civil actions, and I cannot see that the limitation of discovery by way of interrogatories to those issues upon which the interrogating party has the burden of proof will aid this purpose. See E. I. Du Pont De Nemours & Co. v. Byrnes, D.C., 1 F.R.D. 34."

▮ I agree with my colleague in principle but not in procedure. E. I. Du Pont De Nemours & Co. v. Byrnes, supra, was a patent case and my opinion therein was based upon the application of the new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, to *all* civil actions and, therefore, whether the parties sought or desired relief under Rule 26 et seq., or Rule 33, was a matter of choice; but the Federal Rules of Civil Procedure, except in so far as they have been embodied in the new Admiralty Rules, have no application to Admiralty (F.R.C.P. 81(a).

I think this conclusion is well fortified by the decision in Alaska Packers Ass'n v. Pillsbury, 301 U.S. 174, 57 S.Ct. 682, 81 L.Ed. 988, in which Mr. Justice Van Devanter made the distinction between the applicability of the Rules. as applied to appeals in Equity, but not in Admiralty cases.

Judge Moscowitz in The Christina (The Bern), D.C.E.D.N.Y. 35 F.Supp. 522, and Senior Judge Knox, in The Velox and The Karen Thorden, D.C.S.D.N.Y., decided in one opinion dated December 3, 1940, 36 F. Supp. 929, followed the Exermont case, supra; Judge Leibell in Conners Marine Co., Inc., v. Peter F. Connolly Co., Inc., D.C.S.D.N.Y., 35 F.Supp. 775, has apparently held to the contrary, and at least two other judges in this district have followed his ruling.

In Suspine et al. v. Compania Transatlantica Centroamericana S.A. et al. D.C. S.D.N.Y., 37 F.Supp. 263, opinion dated December 6, 1940, I had occasion to indicate a contrary view. As pointed out in that opinion, the liberality of the admiralty practice was emphasized in The Henry S. Grove, D.C., 287 F. 247, where the court said there was nothing in the rules proscribing the right of either party to require disclosure of matters touching the case or defense of the opposite party, as the Federal *Rules* of Civil Procedure now authorize in civil actions, and that Supreme Court Admiralty Rule 44 then provided, and still reads: "In suits in admiralty in all cases not provided for by these rules or by statute, the District Courts are to regulate their practice in such a manner as they deem most expedient for the due administration of justice, provided the same are not inconsistent with these rules."

In these suits the libelant seeks to recover for damages to cargo carried on the S/S Trentbank from Calcutta to New York.

In the Duffus case the cargo consisted of bales of jute, alleged to have been shipped in good order and condition and transported in accordance with the terms of a certain bill of lading; that at the time of delivery the shipment was "seriously injured and damaged by reason of moisture and/or other substance to libelant unknown." The answer, after denying the material allegations of the complaint, but admitting the shipment and transportation of the goods, sets up by way of affirmative defense, certain provisions of the bill of lading and the United States Carriage

of Goods by Sea Act, 1936, 46 U.S.C.A. § 1300 et seq.

In the Citro case the libel alleges delivery in good order and condition of 2607 bags of tea waste to the S/S Trentbank and the delivery by respondent at New York "short and slack and with the bags delivered damp, stained and wet and with their contents damaged." The answer admits receipt by respondent of the 2607 bags "in good order and condition" and pleads, as defenses, certain provisions of the bill of lading, certain provisions of Section 4 (1) of the U. S. Carriage of Goods by Sea Act, and Section 4(2) of that Act, particularly neglect or default of the master, fire, perils of the sea, Act of God, omissions of the shipper, inherent vice, insufficiency of packing, latent defects and the omnibus clause.

■ A judge presiding at an Admiralty Term should not be less zealous to restrict a search for the truth when the method employed does not contravene either a statute or a rule, than the liberality allowed under the Federal Rules of Civil Procedure in a civil action.

■ The admiralty practice is a liberal and enlightened one and should be interpreted with the same spirit of liberality, where the power of the court is not otherwise constricted, as the practice in civil actions.

■ As Judge Woolsey said in The Cleona (The Joseph C. Reichert), D.C., 37 F.2d 599, at page 600: "In the first place, it must be remembered that, fortunately, admiralty practice is plastic. It is largely judge-made, and consequently not technical —in fact, it is less technical than equity practice. Broadening from precedent to precedent, and based on a wisely administered convenience, admiralty practice has always been prepared to cope with new situations as they have arisen [citing cases]."

The first interrogatory excepted to in the Citro case reads as follows:

2. Describe the nature, cause and extent of damage and give the mark and number of each bale claimed to have been so effected.

■ Eliminating the word "cause" this interrogatory is proper and should be answered.

The following interrogatories are not excepted to but are set forth to more intelligently indicate the subject matter of the inquiry:

3. Give the mark and number of each bag short and slack and the quantity short and slack in each bag.

4. With respect to the preceding interrogatory state the gross and net weight of each such bag at the time of delivery to respondent.

5. State the gross and net weight of each sound bag at the time of delivery to respondent.

(The exception to No. 5 was withdrawn and the libelant agreed to answer.)

6. After delivery at New York, state the gross and net weight of each bag (a) sound and (b) damaged.

The following interrogatories are excepted to and the disposition thereof indicated, as follows:

7. (a) Are the weights given in the answer to the fifth interrogatory the weights given to Captain Cocks by Mr. Makepace when he inspected the tea waste in Maywood, N. J. in December, 1939?

■ Exception overruled. The obvious purpose of this interrogatory is to verify the correctness of information previously furnished by libelant to respondent.

(b) If your answer to "(a)" is in the negative, state the figures given by Mr. Makepace to Captain Cocks and where and how those figures were ascertained.

■ Exception sustained. If the weights stated in response to interrogatory No. 5 do not correspond with those furnished by Mr. Makepace to Captain Cocks, it will be the task of the libelant to explain the discrepancies.

8. Did libelant and/or its employees inform Captain Cocks and/or Mr. Makepace that the weights of the sound bags should not have been given to Captain Cocks.

■ Exception sustained. The materialty of the inquiry is not apparent.

9. (a) State the estimated caffein yield of the bags at the invoice weight, showing expected losses in process and how such estimate was arrived at and/or computed and/or ascertained.

(b) State the actual caffein yield for the sound bags and how such yield was ascertained, stating the precise method of ascertainment.

(c) State the actual caffein yield for the allegedly damaged and/or short and slack

bags and how such yield was ascertained, stating the precise method of ascertainment.

(d) State whether the actual caffein content was ascertained at or previously to shipment. If so, state what it was and the precise method of ascertainment and where, when and by whom it was so ascertained.

■ Eliminating the word "precise" in subdivisions (b), (c) and (d) the interrogatory should be answered, and the exception is overruled.

10. State upon what figures and/or computations and/or estimates libelant calculates its alleged damages.

■ Exception sustained. The contention of the respondent that the purpose of this inquiry is not to prove what damage was sustained but whether there is any probable damage at all, is without merit; the subject matter will be relevant only in the event of a reference to a Commissioner if the libelant prevails.

11. State whether or not some shrinkage and/or wastage is expected in sound bags of tea waste while in transit between Calcutta and New York, as here, what amount this is, how this figure is ascertained and the causes for such shrinkage and/or wastage.

Exception overruled.

12. State the external condition of the bags at the time they were delivered to the ship, the age of the bags, whether they were new or second hand, and whether they were patched or unpatched.

Exception sustained.

13. State (a) the actual condition of the contents of the bags at the time they were delivered to the respondent and the Trentbank at Calcutta and (b) the moisture content of the contents at that time and (c) if the contents contained any moisture was respondent informed of this, and if so, to whom, when, where and by whom such information was communicated.

Exception overruled.

14. If the actual condition of contents and moisture content was ascertained previously to delivery to respondent and the Trentbank at Calcutta, state (a) when, where and by whom they were ascertained, (b) the actual condition at that time and (c) the moisture content at that time.

Exception overruled.

15. State (a) when, where and for how long and under what conditions of storage the tea waste was previously to bagging (b) the weather and atmospheric conditions prevailing during such time, (c) when, where and by whom the tea was bagged and weighed and the weather and atmospheric conditions during that time and the weights ascertained and how they were ascertained.

Exception overruled.

16. (a) Where, by whom and under what conditions of stowage and weather and atmospheric conditions the shipment was kept from the time of bagging until moved or shipped:

(b) By what means of conveyance and under what means of protection the shipment was moved from the place referred to in "(a)" and the weather and atmospheric conditions prevailing during such time.

Exception overruled.

17. Is it the fact that Mr. Makepace was (a) an employee of libelant, (b) authorized to deal with weights and other matters connected with handling of the cargo, (c) if your answer to "(b)" is in the negative, state what his job and authority was in connection with the weighing and handling of the shipment after delivery at New York.

Exception overruled.

18. State whether or not libelant claims the vessel was unseaworthy and, if so, in what respect or respects.

Exception overruled—upon authority of New Columbia,[1] D.C.S.D.N.Y. Caffey, J.; Stein Hall & Co., and Canadian Bag, Inc., v. S. S. Trentbank,[1] D.C.S.D.N.Y. Conger, J.

19. State whether or not libelant claims there was a failure to exercise reasonable means to make the vessel seaworthy and, if so, in what respect or respects.

Exception overruled.

20. State whether or not libelant claims the stowage was improper and/or negligent and, if so, in what respect or respects.

Exception overruled.

21. (a) Did libelant and/or underwriters and/or it or their representatives have a surveyor or other representative attend on board the vessel at any time;

(b) If such person or persons did attend on board and found fault and/or criticized

---

[1] No opinion for publication.

(1) The construction of the vessel,

(2) The seaworthiness of the vessel,

(3) The diligence or lack thereof to make the vessel seaworthy,

(4) The stowage of the shipments in question,

(5) The stowage of the shipments in question with respect to other shipments in the same compartment,

(6) The dunnaging and separation of all the commodities in the compartment and libelant's cargo in particular

(7) The ventilation facilities or any other part of the ship's equipment, state separately each and every fault and/or criticism made with respect to "(1)" to "(7)", inclusive.

Exception overruled as to (a), and sustained as to (b).

22. State whether or not libelant claims the alleged damage was due to fault and privity of the carrier and/or fault or neglect of the agent or servants of the carrier and, if so, state separately in each respect there was such fault and privity and/or fault and neglect.

Exception sustained.

The same ruling is made, of course, with respect to identical interrogatories in the Duffus case.

All rulings have been made with reference to the facts in these two cases. Settle order on two days' notice.